**INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS, INC., Through Nityananda dASA Adhikary, a/k/a Nico Kuyt, et al., Plaintiffs,**

v.

**CITY OF NEW ORLEANS, through its Mayor, Honorable Moon LANDRIEU, et al., Defendants.**

**Civ. A. No. 71–684.**

United States District Court, E. D. Louisiana.

July 20, 1972.

Joseph Neves Marcal, III, New Orleans, La., for plaintiffs.

Joseph J. Laura, Jr., Charles Foti, New Orleans, La., for defendants.

CASSIBRY, District Judge:

Plaintiffs, the International Society for Krishna Consciousness, Inc., and certain members thereof,[1] bring this action under 42 United States Code Section 1983 seeking a judgment declaring New Orleans City Ordinance Calendar No. 5113 (828 M.C.S. Chapter 14, Section 14–40) unconstitutional. Plaintiffs also seek to enjoin the defendants, the City of New Orleans and certain agencies and individuals,[2] from prohibiting or preventing plaintiffs from practicing their religion, in particular to enjoin defendants from enforcing said Ordinance. Plaintiffs allege jurisdiction under 28 United States Code Section 1343.

New Orleans City Ordinance, Calendar No. 5113, passed on December 15, 1971 reads:

> It shall be unlawful to solicit money, subscriptions, advertising, gifts in kind or contributions or sell tickets, or magazines for any charitable, religious, educational or benevolent purposes as herein set forth on the sidewalks, streets, malls or squares in the section known as the Vieux Carre which is defined as the area bounded by the River, the Uptown side of Esplanade Avenue, the River side of North Rampart Street and the Lower side of Iberville Street.

As can be seen, the import of this ordinance is to prohibit solicitation in that section of the City of New Orleans known as the Vieux Carre. Because plaintiffs are members of the International Society for Krishna Consciousness, Inc., a religious group, they are included in the solicitation prohibition outlined in the Ordinance.

Plaintiffs contend that the prohibition of solicitation for religious purposes does violence to the First and Fourteenth Amendments to the Constitution in curtailing the free exercise of their religion. The City of New Orleans claims however that in such a special area of the city as the Vieux Carre, some aspects of religion may be minimally regulated in promoting the public welfare.

After a thorough review of the facts and circumstances giving rise to this action, and upon due consideration of the arguments of counsel for the respective parties, I find the New Orleans City Ordinance in question to be unconstitutional as applied to plaintiffs.

The evidence presented by plaintiffs reveals that a basic mission of their religion is to propagate and practice the Sankirtan Movement (beating of cymbals and drums, passing out religious food, etc.) Plaintiffs believe that it is their duty and religious obligation to go into the streets and public places to propagate Sankirtan, and this practice together with the passing out of religious literature and the request for contributions are alleged by plaintiffs to be protected religious activities under the First Amendment to the United States Constitution.

Evidence also presented by plaintiffs revealed that they are struggling economically as a new religion and that the majority of monies obtained by the group are a result of requested contributions while handing out religious literature. These monies are used to purchase more religious literature to hand out and to support the local Temple in New Orleans. Further, plaintiffs' witnesses appeared to earnestly and sincerely believe in their cause. The Krishna religion's objects and purposes were of

---

1. This action was brought by the International Society for Krishna Consciousness, Inc., through Nityananda dAsa Adhikary, a/k/a Nico Kuyt. Certain members also joined as plaintiffs and they are Barbara Aquila, Debra Ruth Wolin, John LeFebvre, William H. Ogle, Nityananda dAsa Adhikary, a/k/a Nico Kuyt.

2. Suit was brought against the City of New Orleans, through its Mayor, Honorable Moon Landrieu, the New Orleans Police Department through its Superintendent, Clarence Giarruso, the Audubon Park Commission, through its Secretary and Superintendent, Dennis J. Lacey, and Officers W. Heller and C. Beatty.

the highest order and I am convinced that they practiced what they preached.

The only issue before the court is whether the request for contributions, solicitations or donations, by plaintiffs as members of a religious cult, may be constitutionally curtailed in the Vieux Carre by New Orleans City Ordinance Calendar No. 5113 (828 M.C.S. Chapter 14, Section 14–40).

First, it is evident that the solicitation of donations or contributions are an integral part of the religious and missionary work of the International Society for Krishna Consciousness, Inc., and its "devotees". Such solicitation of donations goes hand in hand and is the support of plaintiffs' form of missionary evangelism in dissemination of their religious literature.

 Although the First Amendment commandingly protects religious activities such as those concerned with here, religious activities are not without bounds. In some cases incidental burdens may be placed on the free exercise of a religion, if such burdens are dictated by "a compelling state interest", or where activities of a particular religion are "subversive to good order". See in this regard, Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244 (1878) (denied any religious claim to practice polygamy); Prince v. Commonwealth of Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1946) (protection of children, child labor). See also generally, Jacobson v. Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905); Lovell v. City of Griffin, Georgia, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); Schneider v. State of New Jersey, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); Cantwell v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943); Cleveland v. United States, 329 U.S. 14, 67 S.Ct. 13, 91 L.Ed. 12 (1946); Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); Coates v. City of Cincinnati, 402 U.S. 611, 91 S. Ct. 1686, 29 L.Ed.2d 214 (1971).

The City of New Orleans with a view to uphold the Ordinance in question, argues that "the Vieux Carre is a focal point of interest for visitors and residents alike and because of its unique design of yesteryear, its avenues of transportation, both pedestrial and vehicular, are outmoded to say the least. Acknowledging this phenomenon, the Council of the City of New Orleans enacted said Ordinance to facilitate the means of travel in the Vieux Carre by prohibiting solicitations in this area, which had the effect of distracting travelers and congesting traffic. This Ordinance was enacted under the authority granted to it by the State of Louisiana . . .. The Council for the City has recognized that the public in general is rightfully entitled to the use of such thoroughfare free of all obstructions and impediments which tend to delay or obstruct traffic or annoy the public in the use of the streets . . ."

Therefore the question as it presents itself is whether the distraction and annoyance of travelers and congestion of traffic in the Vieux Carre is a State (City) interest of enough magnitude to overbalance the burden placed on Krishnaism by the prohibition of their religious solicitations.

In the case of Sherbert v. Verner, *supra*, the United States Supreme Court deals with similar First Amendment issues as found here. In *Sherbert* the plaintiff, claimant, was denied unemployment compensation benefits because of her refusal, based on religious beliefs, to accept employment which would require her to work on Saturdays. The claimant said that such a requirement imposed a burden on her free exercise of religion, and was therefore unconstitutional as being in violation of the First Amendment. The Court stated:

"We turn first to the question whether the disqualification for benefits imposes any burden on the free exercise of appellant's religion. We think it is

clear that it does. In a sense the consequences of such a disqualification to religious principles and practices may be only an indirect result of welfare legislation within the State's general competence to enact; it is true that no criminal sanctions directly compel appellant to work a six-day week. But this is only the beginning, not the end, of our inquiry. For '[i]f the purpose or effect of a law is to impede the observance of one or all religions or is to discriminate invidiously between religions, that law is constitutionally invalid even though the burden may be characterized as being only indirect.' Braunfeld v. Brown, supra, 366 U.S. [599], at 607, 81 S.Ct. [1144], at 1148 [6 L.Ed.2d 563]. Here not only is it apparent that appellant's declared ineligibility for benefits derives solely from the practice of her religion, but the pressure upon her to forego that practice is unmistakable. The ruling forces her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand. Governmental imposition of such a choice puts the same kind of burden upon the free exercise of religion as would a fine imposed against appellant for her Sunday worship." 83 S. Ct. at page 1793.

In denying the State's right in Sherbert to withhold unemployment benefits, the Supreme Court at page 1795 set forth what is a compelling State interest that allows the State to regulate and place burdens upon a religious activity.

"We must next consider whether some compelling State interest enforced in the eligibility provisions of the South Carolina statute justifies the substantial infringement of appellant's First Amendment right. It is basic that no showing merely of a rational relationship to some colorable state interest would suffice; in this highly sensitive constitutional area, '[o]nly the gravest abuses, endangering paramount interests, give occasion for permissible limitation,' Thomas v. Collins, 323 U. S. 516, 530, 65 S.Ct. 315, 323, 89 L.Ed. 430. No such abuse or danger has been advanced in the present case. The appellees suggest no more than a possibility that the filing of fraudulent claims by unscrupulous claimants feigning religious objections to Saturday work might not only dilute the unemployment compensation fund but also hinder the scheduling by employers of necessary Saturday work."

In the case before the court the City of New Orleans has not shown or displayed any compelling interest or overbalancing need, abuse or danger to justify the substantial, though indirect limitation of plaintiffs' religion. Indeed, there was little, if any, evidence presented by the City to support their arguments with reference to the plaintiffs' solicitations and the City's interest to curtail such solicitations.

In the case of Murdock v. Commonwealth of Pennsylvania, *supra,* the Supreme Court dealt with the issue of the constitutionality of an ordinance which, as construed and applied, required religious colporteurs to pay a license tax as a condition to the pursuit of their activities in distributing religious literature. The Court at page 873 of 63 S.Ct. stated that:

"The alleged justification for the exaction of this license tax is the fact that the religious literature is distributed with a solicitation of funds. Thus it was stated in Jones v. Opelika, supra, 316 U.S. [584] at page 597, 62 S.Ct. [1231] at page 1239, 86 L.Ed. 1691, 141 A.L.R. 514, that when a religious sect uses 'ordinary commercial methods of sales of articles to raise propaganda funds', it is proper for the state to charge 'reasonable fees for the privilege of canvassing'. Situations will arise where it will be difficult to determine whether a particular activity is religious or purely commercial. The distinction at times is vital. As we stated only the other day in Jamison v. Texas, 318 U.S. 413, 63 S.Ct.

669, 672, 87 L.Ed. 869, 'The state can prohibit the use of the street for the distribution of purely commercial leaflets, even though such leaflets may have "a civil appeal, or a moral platitude" appended. Valentine v. Chrestensen, 316 U.S. 52, 55, 62 S.Ct. 920, 922, 86 L.Ed. 1262. They may not prohibit the distribution of handbills in the pursuit of a clearly religious activity merely because the handbills invite the purchase of books for the improved understanding of the religion or because the handbills seek in a lawful fashion to promote the raising of funds for religious purposes.' But the mere fact that the religious literature is 'sold' by itinerant preachers rather than 'donated' does not transform evangelism into a commercial enterprise. If it did, then the passing of the collection plate in church would make the church service a commercial project. The constitutional rights of those spreading their religious beliefs through the spoken and printed word are not to be gauged by standards governing retailers or wholesalers of books. The right to use the press for expressing one's views is not to be measured by the protection afforded commercial handbills. It should be remembered that the pamphlets of Thomas Paine were not distributed free of charge. It is plain that a religious organization needs funds to remain a going concern. But an itinerant evangelist however misguided or intolerant he may be, does not become a mere book agent by selling the Bible or religious tracts to help defray his expenses or to sustain him. Freedom of speech, freedom of the press, freedom of religion are available to all, not merely to those who can pay their own way. As we have said, the problem of drawing the line between a purely commercial activity and a religious one will at times be difficult. On this record it plainly cannot be said that petitioners were engaged in a commercial rather than a religious venture. It is a distortion of the facts of record to describe their activities as the occupation of selling books and pamphlets."

Although Murdock involved the issue of a license tax as a condition to the pursuit of distributing religious literature, the principles outlined in Murdock are clear.

■ Whenever any religious group disseminates religious propaganda, they are in fact delivering their message or sermon and for this they cannot be constitutionally burdened even though they request a donation to pay for such propaganda, unless such burden be for the preservation of some substantial public interest.

■ Plaintiffs have established that one of their religious purposes is to reach the young people and they alleged and proved to the court that they can do this better in the French Quarter. I find the burden imposed by the City in denying the right to plaintiffs of soliciting donations in the Vieux Carre as literature is passed out, when such solicitations are to pay for the literature and to propagate plaintiffs' religion in an area of the city in which plaintiffs feel they may be more successful in reaching prospective converts, is a burden that cannot be sustained.

Plaintiffs are entitled to a judgment declaring the broad New Orleans City Ordinance Calendar No. 5113 (828 M.C. S., Chapter 14, Section 14–40) unconstitutional as applied to plaintiffs in their right to solicit donations in the Vieux Carre. Plaintiffs are also entitled to an injunction restraining the defendants from interfering with plaintiffs' right to an orderly and peaceful solicitation of funds in support of their religious activities. But such an injunction in no way preempts the City of New Orleans from protecting its visitors and citizenry in the Vieux Carre from any breach of City regulations for disturbing the peace, blocking sidewalks, obstructing traffic, committing assaults or any other forms of anti-social conduct.

This opinion shall constitute findings of fact and conclusions of law in accordance with Rule 52(a) Fed.R.Civ.P.