QUESTIONS:
1. May the Volusia County Fair Association [hereafter Association] refuse to rent a booth at the fair to the International Society for Krishna Consciousness, [hereinafter ISKCON], a religious society, on the grounds that said society intends to solicit funds on the fair premises?
2. If the answer to question 1 is in the affirmative, may the association evict ISKCON members if the society should breach an agreement not to solicit funds?
3. May the Volusia County Fair Association deny ISKCON the right to solicit funds on the grounds that the association has a general policy which prohibits all solicitation?
SUMMARY:
The members of the International Society for Krishna Consciousness (ISKCON), a religious society, are entitled, pursuant to thefirst Amendment of the United States Constitution and ss. 3 and 4, Art. I, State Const., to distribut literature to, and solicit contributions from, the public and propagate their regligious beliefs on and in public areas of the Volusia County Fair. The fact that the members of ISKCON solicit and accept donations, and the fact that the Volusia County Fair Association has a general policy against all solicitation do not, according to Supreme Court and lower federal court decisions, abrogate ISKCON's right to engage in such activities. The association may, however, consistent with statutory authority, regulate ISKCON's religious activities to the extent necessary to preserve the purpose of the fair, as well as require the ISKCON members to pay the admission price, remain within the public areas, and conduct their activities during normal operating hours.
As these questions are interrelated, they will be answered together.
My opinion is desired as to the right of members of the International Society for Krishna Consciousness to distribute literature, solicit contributions from the public, and in general propagate their religious beliefs at the Volusia County Fair. Specifically, you are interested in whether the Volusia County Fair Association may require the members of ISKCON to remain in their rented booth at the fair while propagating their religious beliefs, and whether the association may prohibit or otherwise restrict the ISKCON members from soliciting funds from the public in attendance at the fair.
Chapter 616, F. S., generally regulates public fairs and expositions held in this state by, inter alia, providing trade standards for the operation of shows and amusement devices, s. 616.091; requiring licenses upon certain shows, s. 616.12; providing that no fair or exposition may be conducted by a fair association without a permit issued by the Department of Agriculture, s. 616.15; and providing for display of minimum exhibits, s. 616.17. Sections 616.08 and 616.11 set forth the powers and authority of fair associations established pursuant to the chapter. Section 616.08 provides, in pertinent part:
 Every association organized under this chapter shall have the power to hold, conduct and operate fairs and expositions as defined herein annually and for such purpose to buy, lease, acquire and occupy lands, erect buildings and improvements of all kinds thereon and to develop the same; to sell, mortgage, lease, or convey such property or any part thereof, in its discretion, from time to time; to charge and receive compensation for admission to such fairs and expositions, and the sale or renting of space for exhibitions, or other privileges; to conduct and hold public meetings; to supervise and conduct lectures and all kinds of demonstration work in connection with or for the improvement of agriculture, horticulture and stockraising and poultry raising and all kinds of farming and matters connected therewith; to hold exhibits of agriculture and horticultural products, livestock, chickens and other domestic animals; to give certificates or diplomas of excellence; and generally to do, perform and carry out all matters, acts and business usual or proper in connection with fairs and expositions as defined herein; . . . .
Moreover, s. 616.11 authorizes associations to enter into contracts, leases, or agreements with any municipality or county for the donation or use and occupation by any association of land owned, leased, or held by such municipality or county. Counties and municipalities are authorized to make contributions of money or property to associations to be used for fair or exhibition purposes. Such appropriations were held to be constitutional as serving a proper purpose in Barnett Nat. Bank v. Thursby,150 So. 252 (Fla. 1933). Accord: Attorney General Opinion 069-118. Seealso Chs. 15558, 15561, and 15562, 1931, Laws of Florida. Furthermore, s. 616.07(1) provides, in pertinent part:
 . . . no money or property of any such association shall be distributed as profits or dividends among its members or officers, but all money and property of such association shall, except for the payment of its just debts and liabilities, be and remain perpetually public property, administered by the association as trustee, to be used exclusively for the legitimate purpose of the association, and shall be, so long as so used, exempt from all forms of taxation.
The answers to your questions are dependent upon the constitutional rights of freedom of speech and religion guaranteed by the First Amendment, and applicable to the states via theFourteenth Amendment, and ss. 3 and 4, Art. I, State Const.
It appears beyond dispute that there exists sufficient `state action' to bring the activities of the association within the scope of the Fourteenth Amendment. See, e.q., Burton v. Wilmington Parking Authority, 365 U.S. 715 (1961); Smith v. Young Men's Christian Association of Mortgomery, 462 F.2d 634 (5th Cir. 1972). Moreover, the Volusia County fairgrounds appear to be within the class of public facilities that heve been determined to be appropriate forums for the exercise of First Amendment rights. In this regard, the court in Wolin v. Port of New York, 392 F.2d 83,89 (2d Cir. 1968), wrote:
 [W]here the issue involves the exercise of First Amendment rights in a place clearly available to the general public, the inquiry must go further; does the character of the place, the pattern of usual activity, the nature of its essential purpose, and the population who take advantage of the general invitation extended make it an appropriate place for communication of views of issues of political and social significance.
The Wolin court concluded that a bus terminal, like streets of a company town, the grounds of a fair, or the parking lot of a shopping center, was an appropriate place for the expression ofFirst Amendment rights, reasoning at 392 F.2d 90:
 The terminal building is an appropriate place for expressing one's view precisely because the primary activity for which it is designed is attended with noisy crowds and vehicles, some unrest and less than perfect order. Like a covered marketplace area, the congestion justifies the rules regulating other forms of activity, but it seems undeniable that the place should be available for use in appropriate ways as a public forum.
See also ISKCON v. City of New Orleans, 347 F. Supp. 945, 949
(E.D.La. 1972); ISKCON v. Dallas-Fort Worth Regional Airport Board,391 F. Supp. 606 (1975).
Furthermore, in Farmer v. Moses, 232 F. Supp. 154 (D.C. N.Y. 1964), the court made clear that the fact that admission is charged is irrelevant for purposes of the First Amendment, reasoning that the public is not entitled to be insulated from unsolicited viewpoints or ideologies simply because it pays an admission price.
Moreover, it has also been held that religious groups may seek donations or sell religious material without forfeiting theirFirst Amendment rights. In this regard, the following passage from Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105 (1943), is appropriate:
 The mere fact that the religious literature is `sold' by itinerant preachers rather than `donated' does not transform evangelism into a commercial enterprise. If it did, then the passing of the collection plate in church would make the church service a commercial project. . . . It should be remembered that the pamphlets of Thomas Paine were not distributed free of charge. It is plain that a religious organization needs funds to remain a going concern. But an itinerant evangelist however misguided or intolerant he may be, does not become a mere book agent by selling the Bible or religious tracts to help drfray his expense or to sustain him. Freedom of speech, freedom of the press, freedom of religion are available to all, not merely to those who can pay their own way. [319 U.S. at 111.]
See also Tate v. Akers, 400 F. Supp. 987 (D.C. Wy. 1976); Shreveport v. Teague, 8 So.2d 642 (La. 1940). Similarly, the Supreme Court and lower federal courts have consistently enjoined the enforcement of ordinances prohibiting all solicitation as applied to members of religious or other organizations entitled toFirst Amendment protection. See Murdock v. Pennsylvania, supra; Martin v. Struthers, 319 U.S. 141 (1943); Follett v. McCormick,321 U.S. 573 (1944); Cantwell v. Connecticut, 310 U.S. 296 (1940); Tate v. Akers, supra; ISKCON v. City of New Orleans, supra; 77 A.L.R.2d 1216.
In light of the foregoing Supreme Court and lower federal court decisions, I am of the opinion that, subject to the qualifications hereinafter noted, the members of ISKCON may distribute literature to, and solicit contributions from, the public and generally propagate their religious beliefs on and in the public areas of the Volusia County Fair, notwithstanding the fact that rented booths are available or that a general policy against all types of solicitation has been adopted by the association. This conclusion is in accord with opinions rendered on the same issues by the Attorneys General of Pennsylvania (Opinion of the Attorney General to The Honorable Raymond J. Kerstetter, December 30, 1976); New Mexico (Opinion of the Attorney General to Mr. Finlay MacGillivray, August 18, 1976); Arizona (Attorney General Opinion 76-37); and North Carolina (Opinion of the Attorney General to Mr. Arthur K. Fitzer). See also Opinion of the Legislative Counsel of California to The Honorable Pauline Davis, August 13, 1975.
It should be emphasized at this point, however, that the rights protected by the First Amendment are not absolute, and the activities and conduct of ISKCON may be regulated to the extent necessary to protect legitimate state interests. As noted by the Supreme Court in Cox v. State of Louisiana, 379 U.S. 536, 554
(1956):
 The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guaranty of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy.
Thus, it has been held that the state may act to prevent disruption or breach of the peace, Brown v. Louisiana,383 U.S. 131 (1966); or to protect its property for the use to which it was dedicated, Adderley v. State of Florida, 385 U.S. 39 (1966). Seealso Hynes v. Mayor and Council of Borough of Oradell, 44 L.W. 4643 (1976); Singleton v. Woodruff, 13 So.2d 704 (Fla. 1943). Similarly, in Wolin v. Port of New York Authority, supra, the court held that reasonable regulations covering such activity as distributing pamphlets could be promulgated so as to protect a legitimate interest in maintaining a free flow of traffic, avoiding excessive disruption, and ensuring the convenience and movement of passengers and vehicles. More specifically, the court stated at 392 F.2d 94:
 In accommodating the interest of protesters and general public, the Port Authority may set approximate and reasonable limitations on the number of persons who may engage in such activities at any specific time, the duration of the activity and the specific places within the building where the rights of expression may be exercised.
The foregoing constitutional principles, read together with the authority delegated by the Legislature in s. 616.08, F. S., empowering fair associations to `perform and carry out all matters, acts, and business usual or proper in connection with fairs or expositions,' lead me to conclude that the association may regulate the activities of ISKCON in the following areas when authorized by law: require the normal admission price; limit their activities to areas normally open to the public; restrict their activities to the normal hours of the fair's operation.
It is further suggested that s. 616.08, F. S., as well as ss.616.255 and 616.256, F. S., relating to the powers and duties of the State Fair Authority, be amended so as to clarify the authority of such fair associations to regulate the activities of ISKCON and other similar organizations within the strict constitutional limitations. See ISKCON v. Rochford, 45 L.W. 2347 (N.D.Ill. 1977).
Prepared by: Patricia R. Gleason and Sharyn L. Smith Assistant Attorneys General