INTERNATIONAL SOCIETY FOR
KRISHNA CONSCIOUSNESS,
INC., et al.

v.

Otis R. BOWEN, Governor of the State
of Indiana, et al.

No. IP 77–521–C.

United States District Court,
S. D. Indiana,
Indianapolis Division.

Sept. 5, 1978.

Richard D. Boyle of Stanton, Boyle, Hyatt & Reuben, Indianapolis, Ind., Barry A. Fisher, Beverly Hills, Cal., for plaintiffs.

J. Gordon Gibbs, Jr., Asst. Atty. Gen. of Ind., Indianapolis, Ind., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

STECKLER, Chief Judge.

This is a civil rights suit for declaratory and injunctive relief, pursuant to 42 U.S.C. § 1983 (1976) and 28 U.S.C. §§ 2201 and 2202 (1976), brought by the International Society for Krishna Consciousness, Inc. and one of its devotees, concerning the constitutionality of the Indiana State Fair Regulation restricting to a rented booth plaintiffs' sought first amendment expression of freely circulating in those portions of the Indiana State Fairgrounds open to the public, proselytizing, distributing religious literature and gifts such as flowers, and soliciting donations to support their church.

The Court's jurisdiction is grounded upon 28 U.S.C. § 1343(3), (4) (1976).

This suit was filed on August 25, 1977, and on that date, after hearing oral argument, the Court granted plaintiffs' application for a temporary restraining order which remained in effect during the duration of the 1977 Indiana State Fair.

On March 15, 1978, the parties filed cross motions for summary judgment accompanied by stipulations, affidavits and briefs and submitted the case to the Court as a question of law.

On August 18, 1978, the Court on plaintiffs' verified motion for immediate ruling on cross motions for summary judgment or, in the alternative, reinstatement of injunctive relief, issued additional injunctive relief for the duration of the 1978 Indiana State Fair.

The Court has allowed ample time for the parties to submit any and all memoranda and affidavits and the cross motions for

summary judgment are ripe for decision as a matter of law.

Pursuant to Fed.R.Civ.P. 56 the Court hereby GRANTS plaintiffs' motion for summary judgment, and pursuant to Fed.R. Civ.P. 52 the Court's findings of fact, based upon the stipulations of the parties, and the Court's conclusions of law are as follows.

## FINDINGS OF FACT

1. Plaintiff International Society for Krishna Consciousness, Inc. and its members (collectively referred to hereinafter as "ISKCON"), is a duly organized not-for-profit corporation, incorporated under the laws of the State of New York and with various temples located throughout the United States and the world. The plaintiffs, through their members (referred to as "Devotees"), seek to educate the general public as to their religious beliefs by conversing with the general public and disseminating their religious beliefs, literature and information in public forums throughout the world in the age-old form of missionary evangelism. [Stipulation No. 1.]

2. The International Society for Krishna Consciousness, Inc. ("ISKCON") is not a cult but rather is an international religious society which espouses the religious and missionary beliefs of Hinduism as expressed by the Hindu denomination, Krishna Consciousness. Krishna Consciousness is the branch of Hinduism which believes in the absolute supremacy of a single God or Deity (in Sanscrit: "Krishna"). The antecedents of this monotheistic fundamentalist Hindu religion are ancient and pre-date Christianity. [Stipulation No. 12.]

3. Hinduism as expressed by Krishna Consciousness imposes on its members the duty to perform an evangelical religious ritual known as "Sankirtan" which consists of going out into public places and disseminating and selling religious literature and soliciting contributions to support Krishna Consciousness. Sankirtan is directed to spreading religious truth as it is known to Krishna Consciousness, attracting new members and supporting ISKCON's religious activities. Donations and book sales are the very lifeblood and principle means of support of this religious movement. [Stipulation No. 13.]

4. Defendant Otis R. Bowen is the Governor of the State of Indiana and is charged with the duty and responsibility of appointing five (5) members of and to the Indiana State Fair Board (hereinafter "Board") and is an ex officio member of said Board with power to vote on all questions acted upon by said Board, pursuant to Ind. Code § 15–1–1–2 (1978). [Stipulation No. 3.]

5. Defendant Robert D. Orr is the Lieutenant Governor of the State of Indiana and by virtue of his office is the Commissioner of Agriculture and is thereby also an ex officio member of said Board with power to vote on all questions acted upon by said Board, pursuant to Ind. Code § 15–1–1–2 (1978). [Stipulation No. 4.]

6. Defendant Estel L. Callahan is the Secretary-Manager of the Board and in such capacity acts as a full-time paid employee and agent of the Board with authority and responsibility to carry out the policies and directives of the Board. [Stipulation No. 6.]

7. Defendants Dr. Howard G. Diesslin, John L. Fox, R. J. Panke, O. K. Anderson, Walter H. Barbour, Linville I. Bryant, Frederick J. Bumb, Beryl J. Brimme, Kenneth W. Harris, Gladys L. McCormick, R. Ross McKee, Robert E. McKee, Donald E. Smith, Dwight A. Smoker, Paul G. Thurston, and Lola Yoder, individually and in their official capacities as members of the Board, are charged, under Ind. Code § 15–1–1–2, generally with responsibility for administration of the Indiana State Fairgrounds and are charged specifically with the entire control of Indiana State Fairs, including but not limited to the administration of space allocation and the responsibility for policy information. [Stipulation No. 7.]

8. Plaintiffs sought permission to distribute literature and to solicit and accept contributions at the 1977 Indiana State Fair by means of correspondence to and from appropriate state officials and their legal

counsel, which correspondence indicated, in pertinent part:

"This is *not a request for a booth.* It is a request to allow representatives of our religious organization *to circulate in public areas* of the fair while courteously approaching patrons to distribute religious literature, and request and accept contributions." [Emphasis in original.] [Stipulation No. 14.]

9. On July 8, 1977, the defendants advised the plaintiffs that they could apply for booth space but that defendants' policy remained the same as regards to no wandering solicitation, vending or distribution of literature being permitted on the fairgrounds. The defendants provided the plaintiffs with a standard exhibitor's application on July 19, 1977. [Stipulation No. 15.]

10. Plaintiffs, through their attorney, on August 17, 1977, had a conference with the legal counsel for the Board at which time certain conditions were discussed and agreed to in an effort to avoid the necessity of litigation and in a good faith spirit of compromise. On the following day, however, August 18, 1977, plaintiffs were taken into custody by defendants and their agents, interrogated, had their funds confiscated with no offer of a receipt, and threatened with arrest in the event they persisted in their attempts to distribute their literature and solicit contributions in the public areas at the fairgrounds without confining their activities to a previously rented booth. [Stipulation No. 19.]

11. Defendants do not question the validity or sincerity of plaintiffs' religious beliefs or motives. [Stipulation No. 22.]

12. Plaintiffs further attempted, in good faith, through legal counsel, to negotiate conditions with the Board's legal counsel pursuant to which they could exercise their constitutional rights. The Board, however, determined to and did reaffirm its current policy by resolution passed unanimously on August 19, 1977, which reads as follows:

Excerpt from the minutes of the meeting of the Indiana State Fair Board, held Friday, August 19, 1977:

"Upon motion of Mrs. Yoder, seconded by Mr. Robert McKee and unanimously carried, the following resolution was adopted:

"Be it resolved, that in keeping with the on-going policies of the Indiana State Fair Board to make every effort to insure that its fairgoers are assured the maximum opportunity to enjoy the Indiana State Fair, this board reaffirms its prior policy that no distribution of literature or solicitation of donations or the outright selling of literature or any other commodity shall take place anywhere except from the confines of a limited space previously rented by the board; that this policy of no wandering distribution of literature or solicitation or selling also be the on-going policy of this board throughout the entire year—even during non-fair time."

[Stipulation No. 20.]

13. Plaintiffs were admitted to the Indiana State Fairgrounds pursuant to a temporary injunction during the last three days of the Fair, August 26–28. During that time defendants received several oral complaints concerning the conduct of the plaintiffs in the course of plaintiffs' distribution of literature, solicitation of and accepting donations. While only one fairgoer was willing to reduce his complaint to writing, several of the concessionaires were willing to do so and submitted same to the defendants complaining in writing concerning the alleged effect of the activities of the plaintiffs during the last three days of the Fair on the commercial activities of the concessionaires. [Stipulation No. 24.]

14. Approximately 1,333,570 citizens of the State of Indiana and of the United States of America attended the 1977 Indiana State Fair on the Indiana State Fairgrounds which is some 238 acres in size with some 53 permanent buildings located thereon. [Stipulation No. 23.]

15. Plaintiffs' first and fourteenth amendment rights, specifically the right to freedom of speech, the right to free exercise of religion and the right to peaceably assemble are implicit in the concept of ordered liberty. [Stipulation No. 21.]

16. The parties agree that "state action" exists in this case within the meaning of that term in the context of civil rights actions under 42 U.S.C. § 1983 (1976). [Stipulation No. 10.]

17. The parties agree that the Indiana State Fairgrounds constitute a "public forum" within the meaning of that term in the context of the first and fourteenth amendments to the United States Constitution. [Stipulation No. 11.]

18. Defendants herein, by their policy and resolution are attempting to treat plaintiffs like every other organization coming upon the Indiana State Fairgrounds for the purpose of selling or exhibiting their wares, products, merchandise and philosophy. [Stipulation No. 18.]

19. Plaintiffs were not barred access to the 1977 Indiana State Fair. Defendants herein have specifically offered access to the grounds of the Indiana State Fair during the 1977 Indiana State Fair upon the same terms and conditions as it has offered said access to all other persons and organizations seeking the same, *i. e.*, within the confines of a previously rented booth. [Stipulation No. 17.]

## CONCLUSIONS OF LAW

Based upon the foregoing findings of fact the Court now makes the following conclusions of law.

1. This Court has jurisdiction of the subject matter and of the parties to this action pursuant to 42 U.S.C. § 1983 (1976) and 28 U.S.C. § 1343(3), (4) (1976).

2. The defendants in this action were acting under color of state law.

3. The plaintiffs' remedy at law is inadequate to provide them with complete relief from the actions of the defendants.

█ 4. The plaintiffs' sought activity of proselytizing, distributing religious tracts and symbolic gratuities such as flowers constitutes first amendment expression. *See Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943); *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *International Society for Krishna Consciousness, Inc. v. Hays*, 438 F.Supp. 1077, 1081 (S.D.Fla.1977).

█ 5. In the area of first amendment rights, one need not have applied for a permit in order to challenge a statute, rule, regulation or policy on constitutional grounds; standing is recognized because of the danger of tolerating, in the area of first amendment freedoms, the existence of penal or restrictive statutes or rules susceptible of sweeping and improper application. *International Society for Krishna Consciousness, Inc. v. Engelhardt*, 425 F.Supp. 176, 179 (W.D.Mo.1977).

█ 6. For requirements of the first amendment there is no difference between an ordinance or statute and a set of regulations or policy adopted pursuant to state authority; the only question to be decided is whether the regulation or policy meets constitutional requirements. *International Society for Krishna Consciousness, Inc. v. Rochford*, 425 F.Supp. 734, 739 (N.D.Ill. 1977).

7. The principle that the first amendment protects church tract distribution and funds solicitations to support the church was established thirty-five years ago in *Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943), and is no less vital today.

In *Murdock* the Supreme Court emphasized that the first amendment protection is in no way diluted by the "commercial" aspects of the solicitation:

"[T]he mere fact that the religious literature is '*sold*' by itinerant preachers rather than '*donated*' does not transform evangelism into a commercial enterprise. If it did, then the passing of a collection plate in church would make the church service a commercial project. . . . It should be remembered that the pamphlets of Thomas Paine were not distributed free of charge. It is plain that a religious organization needs funds to remain a going concern. . . . Freedom of speech, freedom of the press, freedom of religion are available to all, not merely to

those who can pay their own way." *Id.* at 111, 63 S.Ct. at 874. [Emphasis added.]

As the Court in *International Society for Krishna Consciousness, Inc. v. Rochford,* 425 F.Supp. 734, 739 (N.D.Ill.1977) stated:

"And the mere fact that religious literature is sold, or contributions solicited, does not put this form of evangelism outside the pale of constitutional protection. *Murdock v. Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943); *International Soc. for Krishna Con. v. City of New Orleans,* 347 F.Supp. 945 (E.D.La. 1972)."

■ 8. The Indiana State Fairgrounds constitutes a first amendment "public forum." Recently five Federal District Courts have issued injunctions prohibiting plaintiffs' sought expression and activity from being confined to a booth at a state fairgrounds. *Clark v. Wisconsin State Fair Park Board,* No. 78–C–373 (W.D.Wisc. Aug. 11, 1978); *Anderson v. Ionia Free Fair Association,* Civ. No. G 78–569CA (W.D.Mich. Aug. 7, 1978); *International Society for Krishna Consciousness, Inc. v. Wetzel,* Civ. No. 77–839 Phx-WPC (D.Ariz. Oct. 28, 1977); *International Society for Krishna Consciousness, Inc. v. Carey,* No. 77–CV–3281 (N.D.N.Y. Aug. 30, 1977); *International Society for Krishna Consciousness, Inc. v. New Mexico State Fair Commissioners,* No. 77–0568 Civil (D.N.Mex. April 28, 1977).

9. The fact that admission is charged to gain entrance to the particular "public forum" is of no consequence. As stated by Judge Tyler in the New York World's Fair case, *Farmer v. Moses,* 232 F.Supp. 154, 162 (S.D.N.Y.1964):

"Contrary to defendants' arguments, those of us who pay the regular admission fee and attend the Fair cannot be totally insulated from our fellows, nor can we expect to be shielded from expressions or ideas which are unanticipated and unsolicited. An individual's right of privacy is of practical necessity limited by the rights of others when he leaves his home and ventures forth into public areas, even those which he must pay to enter."

10. Numerous public places, far more enclosed and less open than fairgrounds, have been held to be first amendment forums where persons may circulate and engage in first amendment expression. *See, e. g., Chicago Area Military Project v. Chicago,* 508 F.2d 921 (7th Cir. 1974), *cert. denied,* 421 U.S. 992, 95 S.Ct. 1999, 44 L.Ed.2d 483 (1975) (airport); *Wolin v. Port Authority,* 392 F.2d 83 (2d Cir.), *cert. denied,* 393 U.S. 940, 89 S.Ct. 290, 21 L.Ed.2d 275 (1968) (bus terminal).

11. *International Society for Krishna Consciousness, Inc. v. Griffin,* 437 F.Supp. 666 (W.D.Pa.1977), was a case in which the county commissioners and airport director of the Greater Pittsburgh International Airport attempted, among other things, to regulate the activities of the ISKCON devotees to the confines of designated "solicitation booths" within the terminal. In striking down such a requirement (identical in effect to the Board's regulation in the instant case), Judge Teitelbaum stated:

"[The ordinance] require that solicitations occur only from designated solicitation booths and that any exchange of money must take place in such booths. This provision is likely to discourage contributions by requiring the traveler to go to a specific location if he desires to make a contribution. Most people are unlikely to go out of their way on their own initiative to make a contribution. Thus, the ISKCON members would be denied, or at least restricted in, the opportunity to solicit funds from those travelers who do not pass near the designated booth area. The defendants have asserted no justification for limiting ISKCON's First Amendment rights in such a manner. Accordingly, neither solicitation by ISKCON members nor exchanges of money can be confined to 'solicitation booths.'" *Id.* at 673.

12. Similarly, in *Wolin v. Port Authority,* 392 F.2d 83 (2d Cir. 1968), *cert. denied,* 393 U.S. 940, 89 S.Ct. 290, 21 L.Ed.2d 275 (1968), the Second Circuit concluded that a bus terminal, like the streets of a company

town, the grounds of a fair, or the parking lot of a public center, was an appropriate place for the expression of first amendment rights, reasoning as follows:

"The Terminal building is an appropriate place for expressing one's views precisely because the primary activity for which it is designed is attended with noisy crowds and vehicles, some unrest and less than perfect order. Like a covered marketplace area, the congestion justifies rules regulating other forms of activity, but it seems undeniable that the place should be available for use in appropriate ways as a public forum." *Id.* at 90.

13. It is fundamental that specific restrictions on the exercise of first amendment expression are inherently suspect and bear a heavy presumption against their constitutional validity. A specific restriction on the exercise of first amendment expression is sustainable only if it accomplishes a legitimate, compelling, and overriding governmental interest, only if the restraint is focused and neither overbroad nor overinclusive in meeting its objective, and only if it is unachievable by a less restrictive alternative. *See, e. g., Elrod v. Burns,* 427 U.S. 347, 362–63, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Buckley v. Valeo,* 424 U.S. 1, 64–65, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

14. Even if another forum had been available, that fact alone would not justify an otherwise impermissible restraint. *See Southeastern Promotions v. Conrad,* 420 U.S. 546, 556, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *Schneider v. State,* 308 U.S. 147, 163, 60 S.Ct. 146, 84 L.Ed. 155 (1939).

15. The regulation, policy or resolution of the Board is unconstitutional on its face and as applied to the plaintiffs in so far as it restricts their right to free exercise of their religion in denying them the opportunity to practice the required ritual of "Sankirtan." "Sankirtan," by definition, cannot be practiced from the confines of a booth, *International Society for Krishna Consciousness, Inc. v. Griffin,* 437 F.Supp. 666, 673 (W.D.Pa.1977), and in order to validate such a policy, it is incumbent on the State to come forward with clear and convincing evidence of a "compelling governmental interest" sufficient to outweigh the first amendment rights of the plaintiffs. *International Society for Krishna Consciousness, Inc. v. Hays,* 438 F.Supp. 1077, 1081 (S.D.Fla.1977). No compelling governmental interest has been put forth by the defendants and it is by now beyond dispute that constitutional rights, particularly those encompassed by the first amendment, cannot be proscribed or eroded by the State except for "weighty reasons."

16. We are not faced in the instant case with a situation where the Court must balance competing fundamental interests. Where life is in the balance, as has been the case in the numerous instances of litigation involving the Jehovah's Witnesses and the question of nonvoluntary blood transfusions, the interest of the State in the preservation of life has been properly seen to outweigh the clear but incidental infringement of the first amendment rights of the Witnesses. No such compelling or weighty governmental interest can be contemplated in the instant case. It is clear that adoption of the resolution for a salutory purpose (*e. g.,* so that fairgoers are assured the maximum opportunity to enjoy the Indiana State Fair) will not save what is otherwise a constitutionally deficient regulation of expression.

17. The Board's rejection of plaintiffs' request to use this public forum accomplished a prior restraint under a system lacking in constitutionally required minimal procedural safeguards. *See Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 552, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). The necessary procedural safeguards set forth in *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), include: first, the burden of instituting judicial proceedings and of proving that the material or conduct is unprotected must rest on the censor or licensor; second, any restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo, and

third, a prompt final judicial determination must be assured. *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. at 552, 95 S.Ct. 1239.

In the instant case, no procedures whatsoever are included respecting any of the necessary procedural safeguards set out in *Freedman v. Maryland.* Indeed, the parties have stipulated that here the defendants have placed upon the plaintiffs the burden of contesting the Fair Board's policy or resolution and to pursue what they perceive to be their constitutional rights under the first and fourteenth amendments. [Stipulation No. 25.]

■ 18. A certain amount of inconvenience, discomfort, litter or other incidental effects of first amendment protected activity is not a sufficient justification for restricting such activity. *See Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Schneider v. State,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939).

In *International Society for Krishna Consciousness, Inc. v. Evans,* 440 F.Supp. 414 (S.D.Ohio 1977), a similar regulation at the Ohio State Fair was upheld on the basis that it was a reasonable balancing of conflicting interests. Nevertheless, this Court concludes that the interests advanced by the Indiana State Fair Board are not compelling, and therefore do not justify the restriction imposed by the regulation at issue.

■ 19. Moreover, under any test applied to restrictions on expression, the Indiana Fair rule is not sufficiently, narrowly, and precisely related to the interests advanced by the State. To prohibit plaintiffs from engaging in all first amendment protected expression in all public areas of the State Fair except in a specific booth in a specific building is a device too remotely related to the achievement of any governmental purpose to withstand constitutional scrutiny under any test which might be applied.

Consistent herewith the plaintiffs are entitled to summary judgment granting a permanent injunction.

## SUMMARY JUDGMENT GRANTING PERMANENT INJUNCTION

■ This matter having come before the Court on the cross motions for summary judgment of the plaintiffs and the defendants pursuant to Rule 56 of the Federal Rules of Civil Procedure, and the Court having considered the pleadings filed in this action and the affidavits and memoranda of points and authorities submitted by the respective parties, and having further considered the stipulation of facts agreed to and submitted by the parties, and being of the opinion that no genuine issue as to any material fact has been shown to exist, and that the plaintiffs are entitled to judgment in their favor as a matter of law;

In accordance with the findings of fact and conclusions of law entered by the Court on this date in this cause,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that judgment be entered in favor of the plaintiffs and against the defendants, jointly and severally.

Further, in accordance with the findings of fact and conclusions of law entered by the Court on this date in this cause, IT IS ORDERED that the existing preliminary injunctive relief be, and the same hereby is, made permanent and shall be binding upon the defendants and their successors in office.

IT IS FURTHER ORDERED that defendants and their successors in office and their agents and employees are permanently enjoined from enforcing any rule, policy, practice, custom, regulation or resolution preventing or otherwise interfering with plaintiffs, where plaintiffs' conduct consists of entering the Indiana State Fairgrounds after paying admission, going upon the pedestrian thoroughfares of the Indiana State Fairgrounds open to the general public, talking to members of the public about their religion, gratuitously distributing their religious literature, flowers or other items of nominal symbolic value, and soliciting contributions to support their church so

long as such activities are restricted to the normal hours of operation of the Indiana State Fair.

IT IS FURTHER ORDERED that defendants, their agents, employees and all parties in active concert with them, including their successors in office, are permanently enjoined from applying, implementing or enforcing any rule, regulation, policy or resolution of the Indiana State Fair Board which purports to require that plaintiffs exercise their first amendment rights at the Indiana State Fair only from the confines of a booth previously rented to the plaintiffs by the Indiana State Fair Board.

This injunction is granted on the following conditions:

(1) ISKCON members will be issued with standard ISKCON I.D. cards and will wear them in a visible manner.

(2) ISKCON members will in no way express that any fair or government agency or any organization other than ISKCON is sponsoring and/or connected with their activities.

(3) ISKCON members will not engage in any deliberate touching of unconsenting persons.

(4) ISKCON members will not perform their activities with people engaged in sitting and watching a performance or other special attraction, or waiting in a ticket line, coat line or refreshment line unless prior unsolicited consent is expressed.

In addition to counsel of record, the Clerk shall cause copies of the Court's findings of fact, conclusions of law, and summary judgment granting permanent injunction to be served upon each of the named defendants or their successors in office.

Costs shall be taxed against the defendants.