plaintiff is entitled to $650,000.00 in punitive damages.

For the reasons given above the Court finds that plaintiff is entitled to $165,000.00 in compensatory damages and $650,000.00 in punitive damages.

The Court adopts this memorandum opinion and its memorandum and order of June 23, 1980, granting summary judgment for plaintiff, as its findings of fact and conclusions of law. The clerk of the Court is hereby directed to enter the proper judgment.

INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS, INC. and Carol Shapiro and Susan Pritchard, Plaintiffs,

v.

The LAKE COUNTY AGRICULTURAL SOCIETY, et al., Defendants.

Civ. No. H 79–426.

United States District Court, N. D. Indiana, Hammond Division.

Aug. 14, 1980.

Richard D. Boyle, Boyle, Atlas, Hyatt & Reuben, Indianapolis, Ind., Myrna Hart, Valparaiso University School of Law, Valparaiso, Ind., for plaintiffs.

Michael L. Muenich, Hand, Muenich & Wilk, Hammond, Ind., for defendants.

## MEMORANDUM DECISION

### McNAGNY, District Judge.

This cause comes before the Court on a request for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202.

In the instant suit, the International Society for Krishna Consciousness, Inc. and two of its devotees are seeking to enjoin the defendants from requiring the plaintiffs to lease booth space at the Lake County Fair pursuant to the rules, regulations or policies promulgated by the fair officials. These officials include the current members of the Lake County Agricultural Society, who are charged with the policy-making, operation and administration of the Lake County Fair. The plaintiffs allege that by restricting them to leased booths, the defendants impose a violation of their constitutional rights as provided by the First and Fourteenth Amendments: to-wit, their right to freedom of speech, free exercise of religion and their right to peaceably assemble.

The plaintiffs allege that in order to fully exercise their religious beliefs, or Sankirtan, they must be able to educate and inform the public of their religious beliefs and ideals, and that this education can only be accomplished by the plaintiff's members going into public places to converse with the public, distribute literature and to solicit contributions for the continuation of their work. This solicitation, or Sankirtan, is alleged to be very important to the plaintiff's religion, and it cannot be performed passively by restriction to a booth.

The defendants, on the other hand, allege that they are not infringing upon or abridging the plaintiffs' constitutional rights by restricting them to booths leased from the fair. They contend that the primary purpose of restricting all groups to rental booths is to obtain financing for the fair and its activities and also to allow the greatest access of the public to all the different booths. The ability to put on or provide a fair in the present year is entirely dependent on the financial success of the fair in the preceding year.

The defendants further contend that all groups, whether commercial or non-commercial, are subject to the same terms and conditions, and that such conditions protect both the public and the booth exhibitors in that they prevent infringement upon the fairgoers' right to approach whatever and whichever booth they choose.

In order to sustain a violation of First Amendment freedoms, the Court must decide whether the purposes underlying the restrictions to a booth further some legitimate, compelling or overriding interests of the Lake County Agricultural Society. The Court must additionally determine that the restraint is neither overbroad nor overinclusive. Lastly, the imposed restraint must be the least restrictive of the plaintiffs' freedom of religion, speech and assembly in meeting the objectives of the defendants.

### Findings of Fact

Prior to the commencement of the 1979 Lake County Fair, the attorney for the

plaintiff, International Society for Krishna Consciousness, Inc., contacted the defendants concerning the plaintiffs' wish to disseminate and distribute information at the fair. At this time the plaintiffs were informed that they would have to rent a booth. Subsequent to this conversation, the plaintiffs never requested nor attempted to procure a booth to be used by its members during the time the fair was to take place.

On August 18, 1979, members of plaintiffs' organization, after proper admission to the Lake County Fair, commenced to converse with, disseminate religious information to, and solicit contributions from members of the public for small tokens of symbolic value. In the course of these activities, the plaintiffs were approached by fair officials and a Sheriff's Deputy and informed that they would have to leave the fairgrounds. The plaintiffs were further informed that if they were later caught soliciting contributions, they would be arrested and sent to jail. As a result, the plaintiffs left the fairgrounds and subsequently brought the present action on August 24, 1979.

### Conclusions of Law

This suit, although originally intended to apply to the alleged constitutional violations that took place at the 1979 Lake County Fair, provides a justiciable case or controversy that can be ruled upon at this time. Mootness of a case generally constitutes an inquiry into whether any reasons exist for hearing a case. One consideration in determining mootness is whether the issue is deemed "capable of repetition, yet evading review." *Moore v. Ogilvie,* 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Recently, the Supreme Court in *Securities and Exchange Commission v. Sloan,* 436 U.S. 103, 98 S.Ct. 1702, 56 L.Ed.2d 148 (1978) said that if there is a reasonable expectation that a complaining party would be subjected to the same action again, or where the challenged action was too short in duration to be litigated prior to its cessation, then a case will not fail due to mootness.

In view of the fact that the plaintiffs regularly frequent local fairs throughout the state, and inasmuch as the plaintiffs have indicated that they would be attending the 1980 Lake County Fair; it readily appears that the plaintiffs will be subjected to the same action in 1980. Therefore, even though the alleged violations at the 1979 fair are no longer valid considerations, the action before this Court presents a justiciable case or controversy within the meaning of Article III, Section 2 of the United States Constitution, due to the reasonable expectation that the plaintiffs would be subjected to the same action again.

The defendants correctly raise the point that Rule 17(b) of the Federal Rules of Civil Procedure provides that the capacity of a corporation to sue or to be sued in federal court is to be determined by the law under which it is organized. But it is contended that because the plaintiff is a foreign corporation organized under the laws of New York, that the plaintiffs have no capacity to sue in federal court due to noncompliance with the Indiana "door-closing" statute embodied in Ind.Code § 23–7–1.1–60. The defendants base this proposition on the theory that a "door-closing" statute is clearly a substantive rule under *Hanna v. Plumber,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) and, as such, that it must be given precedence over Rule 17(b) of the Federal Rules of Civil Procedure.

This contention would be correct if this action was based on diversity or alienage. If a state does not permit a suit on a non-federal claim, federal courts sitting in diversity will do likewise. *Angel v. Bullington,* 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947); *Woods v. Interstate Realty Co.,* 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949). This position is further espoused in 3A Moore's Federal Practice ¶ 17.21 at 17–226 —17–227 (2d Ed. 1979), "Any valid state law closing its courts to a foreign corporation which is not qualified to do business in the state must, therefore, be given effect in

the federal courts of such state in a case based solely on diversity or alienage jurisdiction."

However, where an action is based on federal substantive law, then the state "door-closing" statute should not apply. In *Metropolitan Paving Co. v. International Union of Operating Engineers*, 439 F.2d 300 (10th Cir. 1971), *cert. denied*, 404 U.S. 829, 92 S.Ct. 68, 30 L.Ed.2d 58 (1971), the court stated that where the right asserted is federally created, rather than an action based on diversity, then the applicable "door-closing" statute does not operate to bar such an action.

The present case is not an action based solely on diversity. As a result, the "door-closing" statute under Indiana law is not a valid consideration to prevent the commencement of this action.

■ Ordinarily, a private person or private corporation cannot be held liable under 42 U.S.C. § 1983 unless the wrongful action was committed under color or state law or authority. Therefore, the plaintiff must make a showing that the defendant's actions are properly attributable to state action. For the purposes of § 1983:

" . . . state action can be found, either (1) when the state and the entity whose activities were challenged are joint participants in a symbiotic relationship or (2) where the entity is pervasively regulated by the state and a sufficient means exists between the state and the challenged activity. If the former situation is found to exist, all of the entity's actions are state actions and a means between any state regulation and the action need not be shown."

*Benner v. Oswald*, 592 F.2d 174, 179 (3rd Cir. 1979). *See also Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

In the present action both a nexus and symbiotic relationship between the state and the defendants can be shown. The defendant, the Lake County Agricultural Society, is the parent entity for the Lake County Fair Board. Also, the fairgrounds are owned by the taxpayers of Lake County and controlled by the Lake County Board of Commissioners. Furthermore, by an agreement between the Lake County government, the Lake County Board of Commissioners and the Lake County Agricultural Society, the fairgrounds' use has been permitted by societies and fair groups for the staging of expositions and fairs. Included in this group of users is the Lake County Fair. Finally, the Lake County Agricultural Society was formed pursuant to Ind.Code § 15–1–3–1 and therefore must comply with the rules and regulations furnished by the Indiana State Board of Agriculture.

Due to this nexus and relationship between the Lake County Agricultural Society, the Lake County Board of Commissioners, and the Lake County Fair, there exists sufficient state action for this suit to be proper under the Fourteenth Amendment.

The functions carried out by the Lake County Agricultural Society are those traditionally reserved exclusively to the state or other governmental entities. *See Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 171, 98 S.Ct. 1729, 1741, 56 L.Ed.2d 185 (1978). As such, the Society is actually serving a public function and it should not be allowed to allege its private capacity in light of its inherently public role.

■ It has been agreed upon by the parties that there was no personal wrongdoing by any of the individually named defendants, with the exception of John H. Patterson, to bring them within the provisions of 42 U.S.C. § 1983. "It has long been a rule that personal participation is a prerequisite to liability under § 1983." *Hutton v. Heggie*, 454 F.Supp. 870, 875 (D.Colo.1978). In *Hopkins v. Hall*, 372 F.Supp. 182, 183 (E.D. Okla.1974) the court further states that "It is an essential element of a civil rights claim that the particular defendant be personally involved in the alleged denial of a constitutional right." Therefore, since none of the individually named defendants participated in the wrongdoing, and due to the fact that the plaintiffs have no objection to their dismissal, all of the individually named defendants are DISMISSED from

this action. However, as to John H. Patterson, the Court must determine whether he had any personal participation in the alleged § 1983 violation.

■ In a case decided this year by the Supreme Court, *Owen v. City of Independence, Missouri*, 445 U.S. 622, 100 S.Ct. 1398, 1407, 63 L.Ed.2d 673, 684 (1980), the Court said, "... the act imposes liability upon *every person* who under color of state law or custom, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *See also Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). In the present situation, John H. Patterson personally participated in the alleged constitutional violation or deprivation of the plaintiffs' rights under the First Amendment by requesting that plaintiffs leave the fair. As a result of his personal participation, John H. Patterson is a proper party to the present action.

■ Based upon other recent decisions in the United States Court of Appeals for the Seventh Circuit, involving the First Amendment issues raised in this action, this Court needs to go no further than its own District to find the controlling law. The plaintiffs' activities of proselytizing members to their belief, distributing religious material and solicitation of donations clearly constitutes First Amendment expression. *International Society for Krishna Consciousness, Inc. v. Bowen*, 456 F.Supp. 437, 441 (S.D.Ind.1978). In *International Society for Krishna Consciousness, Inc. v. Rochford*, 585 F.2d 263, 270 (7th Cir. 1978) the court said, "There is no question but that the religious ritual of the Sankirtan, the dissemination of religious tracts in combination with a request for donations, is within the protection of the first amendment." *See also International Society for Krishna Consciousness of Berkeley, Inc. v. Kearnes*, 454 F.Supp. 116, 118 (E.D.Cal.1978); *Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943); *Martin v. Struthers*, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943).

■ Regulation of conduct and not belief is a permissible restraint on First Amendment rights; *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); however, in *International Society for Krishna Consciousness, Inc. v. Rochford*, 585 F.2d 263, 270 (7th Cir. 1978), the Court stated "a regulation which restricts the exercise of first amendment freedoms bears a heavy presumption against its validity." *See also International Society for Krishna Consciousness, Inc. v. Bowen*, 456 F.Supp. 437, 443 (S.D.Ind.1978). The restrictions or policies imposed by the defendants in this action constitute such a regulation. "For requirements of the first amendment there is no difference between an ordinance or statute and a set of regulations or policy adopted pursuant to state authority." *Id.* at 441.

■ Once there has been a showing that the free exercise of religion has been restrained, the burden shifts to the defendants "to come forward with clear and convincing evidence of a compelling government interest sufficient to outweigh the first amendment rights of the plaintiffs." *Id.* at 443; *Elrod v. Burns*, 427 U.S. 347, 362, 96 S.Ct. 2673, 2684, 49 L.Ed.2d 547 (1975).

■ The defendants raise several government interests to justify the confinement of plaintiffs to a booth, none of which are sufficient. The defendants first urge that the restrictions upon the plaintiffs allows the greatest access of the public to the booths when considering the particular characteristics or context in which a busy fair operates. However, such restrictions are not compelling enough to justify a restriction to a designated area in which to exercise one's religious beliefs. The fact that the beliefs of the plaintiffs can only effectively be practiced by contact with others in order to spread their beliefs, dictates the idea that "Sankirtan, by definition, cannot be practiced from the confines of a booth." *Id.* Public areas and forums are indeed the most appropriate places in which the plaintiffs can disseminate their ideas. This was expounded in *International Socie-*

ty for Krishna Consciousness, Inc. v. Rochford, 585 F.2d 263 (7th Cir. 1978) when the court concluded that an airport terminal, like the area of a fairground, was appropriate for First Amendment expression:

One is not to have the exercise of his liberty of expression in an appropriate place abridged on the plea that it may be exercised in some other place. The public areas of the airport are appropriate places in which to exercise First Amendment rights, and in fact, are particularly desirable to those who wish to exercise their rights because of the unique quality of a very high turnover of people in the airport. Id. at 272; Chicago Area Military Project v. City of Chicago, 508 F.2d 921, 926 (7th Cir. 1975); International Society for Krishna Consciousness, Inc. v. Bowen, 456 F.Supp. 437, 442 (S.D.Ind. 1978).

Also, restricting the plaintiffs to a booth would severely curtail the effectiveness of their solicitations. As the court in International Society for Krishna Consciousness of Western Pennsylvania, Inc. v. Griffin, 437 F.Supp. 666 (W.D.Pa.1977) stated:

A provision that solicitation of funds for nonprofit religious purposes occur only from designated booths is constitutionally invalid absent an assertion of a compelling need or justification for such limitations. This provision is likely to discourage contributions by requiring the traveler to go to a specific location if he desires to make a contribution. Most people are unlikely to go out of their way on their own initiative to make a contribution. Thus, the ISKCON members would be denied, or at least restricted in, the opportunity to solicit funds from those who do not pass near the designated booth area. Id. at 673; International Society for Krishna Consciousness, Inc. v. Bowen, 456 F.Supp. 437, 442 (S.D.Ind.1978).

The further contention that the continued solicitation by the plaintiffs in the practice of their beliefs will seriously impede or interfere with the other exhibitors and con-

cessionaires likewise does not constitute a compelling interest to justify the restrictions imposed upon the plaintiffs.

"Although the presence of the wandering devotees near the booths of concessionaires may occasionally offend potential customers and drive them away, the Constitution forbids the defendants from restricting Sankirtan on this ground alone. The Constitutional rights at issue here are strong medicine and the resulting verbal tumult or discord are the necessary side-effects." International Society for Krishna Consciousness, Inc. v. Bowen, 600 F.2d 667, 670 (7th Cir. 1979), cert. denied.

Another interest advanced by the defendants is that, without the rentals of booths to such organizations or religious groups, the very existence of the fair will be jeopardized. This contention is based solely on the fact that funding at future fairs is completely and solely derived from admission fees, booth rentals and a percentage of the concessions and rides. The Court recognizes the importance of such fees, but the defendants have not sufficiently shown how the non-payment of a booth by the plaintiffs will in and of itself seriously jeopardize the fair. In fact, it is admitted that the plaintiffs paid the proper admission to the fair in lieu of the nominal fee for booth rental. In light of this fact, it is difficult for the Court to understand how the absence of the rental fee will seriously jeopardize the existence of the fair.

Finally, the defendants assert that if the Court is going to allow the plaintiffs to freely roam the grounds of the fair, then other religious and social groups will have to be allowed the same opportunity, and that the resulting chaos that will result is a compelling enough interest to confine the plaintiffs to a booth. This argument fails to recognize that one of the cornerstones, or the very essence of the practice of Sankirtan is principalled on the plaintiffs' free association with members of the public.[1]

---

1. The aspects of the religion, Sankirtan, are more fully described in International Society

for Krishna Consciousness, Inc. v. Conlisk, 374 F.Supp. 1010 (W.D.Ill.1973); International So-

There has been no showing by the defendants that any other groups would have to be allowed the same considerations as do the plaintiffs in this action. In fact, other members of the plaintiffs' organization have been allowed to practice Sankirtan at the Indiana State Fair, and at other local fairs throughout the state for the last three years without any significant incidents or resulting chaos. Absent a showing that such chaos would result and that the public safety and welfare of the fairgoers would be jeopardized, *International Society for Krishna Consciousness v. Rochford*, 585 F.2d 263, 271 (7th Cir. 1978); *Wolin v. Port of New York Authority*, 392 F.2d 83 (2nd Cir. 1968), *cert. denied*, 393 U.S. 940, 89 S.Ct. 290, 21 L.Ed.2d 275 (1968), the First Amendment rights of the plaintiffs cannot be limited.[2]

Moreover, under any test applied to restrictions on expression, the policy and regulations imposed by the Lake County Agricultural Society is not sufficiently, narrowly and precisely related to the interests advanced. To prohibit plaintiffs from engaging in all First Amendment protected expression in all public places of the fair except in a booth is a device too remotely related to the achievement of any governmental purpose to withstand constitutional scrutiny. *International Society for Krishna Consciousness, Inc. v. Bowen*, 456 F.Supp. 437, 444 (S.D.Ind.1978).

Consistent herewith the plaintiffs are entitled to the granting of a permanent injunction.

### Granting Permanent Injunction

This matter having come before the Court on a request seeking a declaratory judgment and a preliminary injunction, and the Court having considered the pleadings, affidavits and memoranda of points and authorities submitted and filed by the respective parties, and after considering all the points put forth at the hearing, now determines that the plaintiffs are entitled to judgment in their favor as a matter of law;

It is hereby ORDERED, ADJUDGED and DECREED that judgment be entered in favor of the plaintiffs and against the defendants, Lake County Agricultural Society and John H. Patterson, jointly and severally.

Further, in accordance with the findings of fact and conclusions of law entered by the Court on this date in this cause, it is ORDERED that the existing preliminary injunctive relief be, and the same hereby is, made PERMANENT and shall be binding upon the defendants and their successors in office.

---

ciety for Krishna Consciousness, Inc. v. New Orleans, 347 F.Supp. 945 (E.D.La.1972); and International Society for Krishna Consciousness, Inc. v. Englehardt, 425 F.Supp. 176 (D.Kan.1977).

2. This Court is well aware of the Fifth Circuit Court of Appeals decision in International Society for Krishna Consciousness of Atlanta v. Eaves, 601 F.2d 809 (5th Cir. 1979). The Fifth Circuit decision involved an ordinance whereby the appellants could ask for funds or attempt to sell religious tracts at any place in the Atlanta airport where they were allowed to proselytize. The ordinance required only that instead of accepting any proffered money, they refer the donor to a solicitation booth. The basis of such a provision was that the transfer of money is a mechanical, non-communicative and disruptive aspect which causes fumbling through pocketbooks and wallets, the searching for the right amount of money, making change and the dropping of money. Therefore, the Fifth Circuit held that this restriction outweighed the restrictive effect on First Amendment freedoms on the consideration of its fairness, ease of enforcement and the reduced disruption that the ordinance provided. The Atlanta ordinance did not prohibit requests for donations but rather the place in which the donation could be made. The ordinance did not attempt to stop proselytization of beliefs but only the exchange of money. The facts before the Seventh Circuit in Bowen and the present action differ from the Atlanta decision in that they attempted to limit all aspects of the plaintiff's activities to a booth. Such an encompassing limitation cannot withstand the scrutiny of the requisite showing of a compelling need for the restriction. Further, this Court fails to see how the exchange of money will cause any more disruption than that which will have already ensued in the proselytization. Finally, many other commercial sales and exchanges of money take place continuously which do not cause the disruption alleged.

It is FURTHER ORDERED that the defendants, their agents, employees and all parties in active concert with them, including their successors in office, are PERMANENTLY ENJOINED from applying, implementing or enforcing any rule, regulation, policy or resolution of the Lake County Agricultural Society which purports to require that the plaintiffs exercise their First Amendment rights at the Lake County Fair only from the confines of a booth previously rented to the plaintiffs by the Lake County Agricultural Society.

This injunction is granted on the following conditions:

(1) International Society for Krishna Consciousness, Inc. or ISKCON members will be issued with standard ISKCON identification cards and will wear them in a manner visible to the public.

(2) No person shall distribute literature or solicit contributions, other than those who have previously rented booths, unless he shall have registered beforehand with the proper authorities or officials of the fair for each day in which such activities are engaged. Each person shall give his name and address and indicate that she/he is a member of ISKCON.

(3) ISKCON members will in no way express that any fair or government agency or any organization other than ISKCON is sponsoring and/or connected with the activities.

(4) ISKCON members will not engage in any deliberate touching of unconsenting persons.

(5) ISKCON members will not perform their activities with people engaged in sitting and watching a performance or other special attraction, or waiting in a ticket line, coat line or refreshment line unless prior consent is expressed.

(6) No individual shall be solicited by more than one ISKCON member at a time unless prior consent is given by the person so solicited.

(7) No ISKCON member shall erect a table, chair or other structure, other than a leased booth, that will interfere with the free passage to, or access of, other persons to all facilities and/or attractions of the fair.

Costs shall be taxed against the defendants.