**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Tommy J. HINES, Defendant-Appellant.**

No. 77–5138.

United States Court of Appeals,
Fifth Circuit.

Nov. 21, 1977.

Rehearing Denied Jan. 20, 1978.

---

J. Donald Guinn, Leonard E. Davis, Tyler, Tex., for defendant-appellant.

Roby Hadden, U. S. Atty., Otis W. Carroll, Jr., Asst. U. S. Atty., Tyler, Tex., for plaintiff-appellee.

Before THORNBERRY, Circuit Judge, SKELTON, Senior Judge *, and HILL, Circuit Judge.

SKELTON, Senior Judge:

Appellant, Tommy Hines, was tried on a two count indictment charging him with violating 18 U.S.C. § 2316, transportation of stolen cattle in interstate commerce; and 18 U.S.C. § 2317, disposing of stolen cattle in interstate commerce. Appellant was convicted by a jury on both counts. Judgment was subsequently entered sentencing appellant to a maximum of five years on each count, to run consecutively.

The Government sought to prove that the cattle alleged in the indictment were stolen and had been transported and disposed of in interstate commerce by showing that such cattle had belonged to Edward Luther Freund, that they had been stolen by the appellant and that such cattle were part of a shipment of cattle which the appellant transported from Wills Point, Texas, to Pauls Valley, Oklahoma. After reviewing the evidence in its entirety in the light most favorable to the Government,[1] we have concluded that reasonable minds could not have concluded that the evidence established, beyond a reasonable doubt, that the cattle alleged in the indictment were a part of the cattle transported and disposed of in interstate commerce. Accordingly, we reverse.

The evidence, viewed in a light most favorable to the Government,[2] indicates that in October of 1974, Tommy Hines, appellant herein, contacted Edward Luther Freund regarding the purchase of some thirty-nine Charolais cattle owned by Freund and branded on the hip with the Freund brand, a backward E attached to an F.

Freund and Hines concluded a deal by which Hines gained possession of the cattle in exchange for the principal sum of $500., a note for $7,000. and a security agreement with bill of sale attached. Hines took possession of the Freund cattle with the express understanding (as well as contractual condition) that the cattle would be kept on Hines' ranch north of Tyler, Texas, until all consideration had been paid the Freunds. Hines made no payments as the installments of the note came due, ignored telephonic and written inquiries by the Freunds and refused to discharge his obligation. These facts, and testimony relating to extraneous acts perpetrated by appellant, were introduced by the Government to establish the knowledge of the appellant that the cattle alleged in the indictment were stolen cattle.

The Government sought to establish the interstate character of the offense by the testimony of four witnesses—the owner of an auction barn in Wills Point, Texas, a veterinarian, a truck driver, and the owner of an auction barn in Pauls Valley, Oklahoma. The owner of the auction barn in Texas, Mr. D. Priest, testified that on Tues-

* Senior Judge of the United States Court of Claims, sitting by designation.

1. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

2. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

day, July 1, he allowed appellant to use his auction barn for the purpose of testing and shipping cattle. When Mr. Priest went to the barn that afternoon he noticed some big Charolais cattle, which did not belong to him or his barn, branded with a brand *similar* to the Freund brand. This witness further testified that the appellant was the only one using his barn on that particular day and that some of the cattle appellant had brought to his barn were loaded into trucks for shipment, although he did not know which cattle were loaded, how many were loaded nor the destination of such cattle.

The veterinarian, Dr. Travis Deen, testified that on June 30 and July 1, 1975, at appellant's request, he tested 256 head of cattle located at an auction barn in Wills Point, Texas, and certified them disease free in conformity with government regulations relating to the interstate shipment of cattle. The doctor's records specifically designated Pauls Valley, Oklahoma, and Geary, Oklahoma, as the intended destination of the cattle which he tested. The doctor, however, saw no cattle loaded, could only identify the cattle as a "uniform bunch of cows" and had no recollection of any brand or other identifying characteristic of a single cow he tested. The doctor also testified that he based his knowledge of the destination of the cattle solely on the word of the appellant.

The truck driver, Ronald Ray Robbins, testified that on Tuesday, July 1, 1975, he loaded and hauled cattle belonging to the appellant to Pauls Valley, Oklahoma, as did two other truck drivers. Government's Exhibit no. 6, verified by Mr. Robbins as the bill of lading he signed upon the loading of his truck, established that he had carried seven cows and calves mixed, twenty-one head of Charolais and twenty calves, a total of fifty-five head, from Texas into Oklahoma. The witness made no attempt to further identify the cattle.

The owner of the Pauls Valley Livestock Auction, Mr. Carl Ferguson, referring to documents he termed "seller's sheets," testified that on July 2, 1975, he received a consignment of 256 head of cattle, some of which were Charolais, from T. T. Hines, thought by Mr. Ferguson to be the appellant's father. He further testified that appellant had previously done business with him in the name of T. T. Hines. Mr. Ferguson could make no further identification of the cattle he received.

This was all the evidence offered by the Government to establish the interstate element of the offense charged in the indictment. The evidence proffered by the Government to prove the cattle alleged in the indictment were at the Wills Point auction barn on June 30th and July 1, 1975, is insufficient. It establishes only that cattle of the same breed and with a brand *similar* to the cattle alleged in the indictment were at that location. Furthermore, the chain of circumstantial evidence completely deteriorates at this point. Although it was established the veterinarian certified 256 head of cattle for shipment and that 256 head of cattle were actually shipped to Oklahoma, there is absolutely no evidence that the cattle "described" by Mr. Priest were a part of this shipment. There is no evidence as to the total number of cattle at the auction barn on that day nor any testimony to the fact that all of the cattle at the auction barn in Texas were shipped. There is no identification, other than breed, of the cattle loaded into the trucks in Texas. There is no identification, other than breed, of the cattle transported by such trucks into Oklahoma. And lastly, there is no identification, other than breed, of the battle disposed of by sale at the Pauls Valley Auction Barn. This, we hold, is insufficient as a matter of law to prove that the cattle alleged in the indictment are the same cattle as were transported and disposed of in interstate commerce.

The statutes under which appellant was brought to trial, 18 U.S.C. §§ 2316, 2317, each possess an interstate character identical to the interstate character of statutes dealing with stolen vehicles found at

18 U.S.C. §§ 2312, 2313. If the Government fails to establish that interstate character, it has failed to establish an essential element of the offense and reversal is required. *Watkins v. United States,* 409 F.2d 1382 (5th Cir. 1969), cert. denied, 396 U.S. 921, 90 S.Ct. 252, 24 L.Ed.2d 202; *Thompson v. United States,* 334 F.2d 207 (5th Cir. 1964); *Tyler v. United States,* 323 F.2d 711 (10th Cir. 1963); *Cox v. United States,* 96 F.2d 41 (8th Cir. 1938).

■ It has been the consistent holding of this circuit that evidence, in order to sufficiently establish the interstate character of Dyer Act cases, must identify the stolen vehicle in the state to which it has been transported beyond a reasonable doubt. And while it is clearly the law that such identification may be established by circumstantial as well as by direct evidence, there may not be such a break in the chain of circumstantial identification as would cause that chain, while consistent with guilt, to not be inconsistent with innocence. Proof of circumstances which, while consistent with guilt, are not inconsistent with innocence, will not support a conviction. *Cox v. United States,* supra; *McClintock v. United States,* 60 F.2d 839 (10th Cir., 1932). The test which has been applied to the Dyer Act cases is that:

> "There must be some evidence of common characteristics other than color, make, and model of the automobile in order to establish its identity."

See: *Watkins v. United States,* supra; *Tyler v. United States,* supra; *Cox v. United States,* supra.

■ Requiring the same degree of proof in the instant case, it is not at all difficult for this court to find that appellant's theft of cattle in Texas and the appearance of cattle of the same breed in Oklahoma, under the control of the appellant, without more, is not sufficient for a conviction on the charges brought against the appellant in this case. See: *United States v. Smith,* 493 F.2d 24 (5th Cir. 1974).

■ The test by which we review the sufficiency of the evidence of guilt has been well stated for this court in *Clark v. United States,* 293 F.2d 445 (5th Cir. 1961):

> "This court, although recognizing that questions as to the credibility of witnesses and weight of evidence are for the jury, has the right and, we may say, is under a duty, to examine the record and determine whether there is any competent and substantial evidence fairly tending to support the verdict of guilt. In so reviewing the sufficiency of the evidence to justify a finding of guilt beyond a reasonable doubt in a circumstantial evidence case, the test we are to apply is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt. *Riggs v. United States,* 5 Cir., 1960, 280 F.2d 949; *Cuthbert v. United States,* 5 Cir., 1960, 278 F.2d 220; *Dicks v. United States,* 5 Cir., 1958, 253 F.2d 713."

Since the Government failed to prove, either by direct or by circumstantial evidence, that the cattle appellant sold in Oklahoma were the cattle stolen from Freund in Texas, we hold the jury could not have reasonably found that the evidence excluded every reasonable hypothesis except that of guilt. We hold, therefore, that the evidence was insufficient to support a conviction of appellant for the transportation of stolen cattle in interstate commerce or for a conviction of disposing of stolen cattle in interstate commerce, as charged in the indictment.

■ The failure of the appellant to move for acquittal at the close of the Government's case does not preclude our reversing this case upon a finding that there is not sufficient evidence to support the verdict. As the court said in *Cox v. United States,* supra:

> ". . . the error of submitting the case to the jury for determination is so plain and vital that this court is at liberty to and will reverse even in the absence of a proper motion and exception, not be-

cause the defendant has a right to demand a reversal, but solely in the public interest and to guard against injustice. *Wiborg v. United States*, 163 U.S. 632, 658, 16 S.Ct. 1127, 1197, 41 L.Ed. 289; *Ayers v. United States*, supra, 8 Cir., 58 F.2d 607, 609, 610."

This court said in *Meeks v. United States*, 259 F.2d 328 (5th Cir. 1958):

"After the Government rested, appellant moved for a judgment of acquittal. The court denied the motion. Thereafter appellant introduced evidence in his behalf but did not renew his motion for acquittal at the close of all the evidence, as required under Criminal Rule 29, 18 U.S.C.A. Appellant's failure to renew his motion operates to waive the benefit of the motion. *Ansley v. United States*, 5 Cir., 1943, 135 F.2d 207; *Moomaw v. United States*, 5 Cir., 1955, 220 F.2d 589. We may, however, review the sufficiency of the evidence to prevent a manifest miscarriage of justice. *Thomas v. United States*, 5 Cir., 1951, 189 F.2d 430; *Demos v. United States*, 5 Cir., 1953, 205 F.2d 596."

Having found the evidence to be insufficient to affirm appellant's conviction, it is not necessary that we proceed to rule on appellant's second point concerning the admissibility of extraneous offenses.

The judgment is reversed and the cause remanded to the trial court with directions to enter a judgment of acquittal.

REVERSED and REMANDED.