**INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS, INC., and Hasyapriya Das, on behalf of themselves and all International Society for Krishna Consciousness Members, Plaintiffs,**

v.

**Robert REBER, Buena Park Chief of Police, and Cecil Hicks, Orange County District Attorney, Individually, and in their official capacities, Russell Knott, and Knott's Berry Farm, a Partnership, Defendants.**

No. CV 76-545-WMB.

United States District Court, C. D. California.

Aug. 14, 1978.

---

Barry A. Fisher, Fleishman, McDaniel, Brown & Weston, Los Angeles, Cal., for plaintiffs.

J. M. Brennan, Newport Beach, Cal., Cliff Harris, Deputy Dist. Atty., Santa Ana, Cal., Ronald H. Bevins, Anaheim, Cal., for defendants.

## MEMORANDUM OPINION

WM. MATTHEW BYRNE, Jr., District Judge.

This is a suit for declaratory· and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–02, brought by International Society For Krishna Consciousness, Inc. ("ISKCON", a non-profit California corporation) and Hasyapriya Das, who is an adherent to the teachings of ISKCON, to enjoin the arrest and prosecution of its members for trespass while distributing religious literature and soliciting donations to

support Plaintiffs' church on a segment of the sidewalks abutting Grand Avenue between Crescent Avenue and La Palma Avenue, Buena Park, California. The cause was tried to the Court on stipulated facts.

Defendants are Robert Reber, Buena Park City Police Chief; Cecil Hicks, Orange County District Attorney; Knott's Berry Farm, a California partnership which operates an amusement park in Buena Park known as Knott's Berry Farm; and Russell Knott, a partner in the Knott's Berry Farm partnership.

The Plaintiffs predicate their action against the Defendants on the right to freedom of speech protected under the First and Fourteenth Amendments.

## I THE FACTS

Grand Avenue begins at its southern point in a residential community and proceeds north approximately 1½ miles where it ends at its northern point as it enters and merges into State Highway 39 (Beach Boulevard). It is the last 1,021.24 feet of the northern end of Grand Avenue on which the activity by Plaintiffs occurred and on which Plaintiffs seek to establish rights by this action.

Except for this section, Grand Avenue is a publicly owned and maintained street open to public vehicular and pedestrian use. The 1,021.24 foot section of Grand Avenue was previously owned by the City of Buena Park, but was vacated to Knott's Berry Farm in 1967 by resolution of the City Council. The land abutting it on either side of the 1,021.24 foot section of Grand Avenue is owned in fee simple and entirely maintained by Knott's Berry Farm. Vehicles may proceed only in a southerly direction through the privately owned section of Grand Avenue. On Christmas Day of each year, the section is completely closed to pedestrian and vehicular traffic by Knott's Berry Farm. At various times of the year, the section has been closed to vehicular traffic by the Buena Park Police Department due to traffic congestion. Several times a week, Knott's Berry Farm employees divert traffic from the section of Grand Avenue into a parking area when heavy traffic so requires.

The land surrounding this section of Grand Avenue is owned by Knott's Berry Farm and used as an amusement park which includes rides, games, restaurants, shops and a non-denominational church. On either side of the 1,021.24 foot section of Grand Avenue are shops and a restaurant owned and operated by Knott's Berry Farm but open to the general public, along with a bus stop, mailboxes, and newspaper racks. The entrance gate to the west portion of the park is located behind the shops, and this gate is accessible only from the section of Grand Avenue in question. Pedestrians commonly congregate in this area and use it to enter and exit the park.

A 6 inch by 12 inch plaque is located in the sidewalk at both the northern and southern ends of the 1,021.24 foot section which states: "Private Property—Permission to Pass Over Revocable at Any Time." There are no physical obstructions to pedestrian traffic within this section.

The amusement park is bounded by Stanton Avenue on the east side, Western Avenue on the west side, La Palma Avenue on the north side, and Crescent Avenue on the south side, and State Highway 39 traverses the park. These streets are publicly owned and maintained thoroughfares open to and dedicated for both vehicular and pedestrian public use. On entering and exiting the amusement park, the public necessarily uses these public streets.

On February 10, 1976, at 4:00 p. m., ISKCON members distributed their religious literature and verbally solicited financial contributions for their organization from individuals along the sidewalk within the 1,021.24 foot section of Grand Avenue owned by Knott's Berry Farm. No chanting, singing, shouting, sound amplification, or blockage of pedestrian or vehicular traffic occurred. A member of the Knott's Berry Farm Security Force, which is entirely controlled by Knott's Berry Farm, contacted Plaintiffs and advised them that they would be subject to arrest for trespass

if the activity continued. This action was taken in conformity with Knott's Berry Farm's policy of refusing to allow members of any organization to solicit contributions, distribute literature or otherwise solicit or proselytize the public within any portion of the amusement park, including the relevant portion of Grand Avenue.

On the same date, Plaintiffs' representatives went to the Buena Park Police Department to clarify their rights to distribute literature and solicit donations along the section of Grand Avenue in question. An officer informed Plaintiffs that that segment of Grand Avenue was private, and that any arrest thereon would be by a Knott's Berry Farm employee and not by the police. The officer also told Plaintiffs that if a citizen's arrest was made, the Buena Park Police Department would receive custody of the person arrested and would prepare the paperwork for submission to the District Attorney's Office for complaint. Plaintiffs have never been arrested by Buena Park Police officers or an employee of Knott's Berry Farm for any activity occurring on Grand Avenue but Plaintiffs have refrained from engaging in said conduct under threat of such arrest.

## II  DISCUSSION OF THE MERITS

■ *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), precludes federal suit when a state criminal action based on the same nucleus of operative facts is pending. Since Plaintiffs have not been arrested, *Younger* is not applicable to the instant action. Plaintiffs claim, however, that while they have not actually been arrested, they are threatened with the possibility of arrest if they engage further in distribution of their literature and verbal solicitation for financial contributions for their organization from individuals on the section of Grand Avenue owned by Knott's Berry Farm. The Supreme Court in *Doran v. Salem Inn,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), held that if there exists a threat of arrest which would be processed through the state courts, federal injunctive relief is proper as long as no criminal pro-

ceedings are in fact pending in state court. Thus, the existence of the potential for prosecution of Plaintiffs in the state courts does not preclude this court from granting injunctive relief.

■ Plaintiffs have stipulated that the Buena Park Police Department will process any citizen's arrest for submission to the District Attorney's Office for complaint. On this basis, Plaintiffs include as defendant the Buena Park Chief of Police, Reber, and the District Attorney for Orange County, Hicks, alleging that the potential for action on their part in processing a possible citizen's arrest by employees of Knott's Berry Farm chills Plaintiffs' exercise of their First Amendment rights. Under 42 U.S.C. § 1983, an action for deprivation of constitutional rights is available against one who under color of law "subjects or causes to be subjected" a person to such deprivation. Plaintiffs' Complaint contains no allegation of an actionable wrong on the part of either Reber of Hicks. The stipulated facts establish no actual controversy between Plaintiffs and Defendants Reber and Hicks, as required for declaratory relief under 28 U.S.C. § 2201. The Buena Park Police did not threaten Plaintiffs with arrest, but rather gave Plaintiffs advice at their request. A "controversy" cannot be created by challenging a defendant to state his opinion and then disputing the defendant's conclusions. *Perlberg v. Northwestern Mutual Life Insurance Co.,* 62 F.Supp. 76 (E.D.Pa.1945). Plaintiffs have failed to state a claim against Reber and Hicks since they have not established an actual controversy upon which relief can be granted.

■ Plaintiffs may seek to include the Police Chief and District Attorney as defendants in order to bring the instant action more clearly within the gambit of the state action requirement of the Fourteenth Amendment which must be present if Plaintiffs are to prevail in their action for declaratory and injunctive relief based upon an alleged violation of their First Amendment rights to free speech. The ability to use state trespass laws to enforce private property rights, however, is irrelevant to

the state action requirement of the Fourteenth Amendment.[1]

The actual controversy in this action is between Plaintiffs and Defendants, Russell Knott and Knott's Berry Farm, owners of the property upon which Plaintiffs seek to exercise their rights of free speech. Plaintiffs contend that despite the fact that the section of Grand Avenue in question is privately owned and maintained, as long as it is used as a public street it is a traditional forum for free speech, and the owner (fulfilling the state's function) therefore may not prohibit First Amendment expression. Admittedly the section of Grand Avenue in question would appear to the average person to be a public street, and thus the reasonable expectation would be that it is an appropriate forum for First Amendment expression. The Plaintiffs, however, have been informed that the relevant section of Grand Avenue is in fact privately owned and that Knott's Berry Farm has a right to completely cut off access to it. But Plaintiffs assert that as long as Knott's Berry Farm treats the property so that it is indistinguishable from a public street, it is an appropriate forum for expression.

The public's traditional right of access to the streets and sidewalks as public places upon which the exercise of First Amendment rights will be protected is well established.[2] The line of cases that sets forth this right, however, deals with areas which are clearly public.[3] The question here presented is the extent to which speech should be protected under the First Amendment when it takes place on property that appears to be public but actually is privately owned.

In *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), the Supreme Court in balancing the right to freedom of expression against private property rights, concluded that since the privately owned company town duplicated the functions of a public municipality, First Amendment rights would be protected to the same extent that they would be in a public town. In upholding the public's right to exercise First Amendment rights on the streets of the privately owned company town, the Court noted that while the town was privately owned, it was, in fact, the functional equivalent of a municipality and thus there was *no* appropriate publicly owned forums available for the exercise of speech.

The Supreme Court again considered the conflict between free speech and private property rights in *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.,* 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968), in which plaintiffs sought to picket a store with which they had a labor dispute. The store was located in a privately owned shopping center mall. The court noted that the First and Fourteenth Amendments would clearly have protected the picketing if it had taken place on a public sidewalk. The court was influenced by the relatedness of the speech to the activities of the shopping center, noting that the speech in question concerned the labor practices of a particular store in the shopping center, and that the picketing was aimed to influence customers of that store. Concluding that a privately owned shopping center mall was the functional equivalent of a business district in a municipality, it held that for First Amendment purposes, the shopping mall must be treated in substantially the same manner.

In *Lloyd Corp., Ltd. v. Tanner,* 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972), plaintiffs sued for declaratory and injunctive relief when they were told they could

1. *See* Glennon & Novak, A Functional Analysis of the Fourteenth Amendment State Action Requirement, 1976 Sup.Ct.Rev. 221, 223. The authors point out that since exclusiveness of use is an important part of a private property right, the ability to use state trespass laws consequently becomes a necessary part of that property right rather than an independent basis for meeting the state action requirement.

2. *See, e. g., Flower v. United States,* 407 U.S. 197, 92 S.Ct. 1842, 32 L.Ed.2d 653 (1972); *Cantwell v. Connecticut,* 310 U.S. 296, 308, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Schneider v. State,* 308 U.S. 147, 163, 60 S.Ct. 146, 84 L.Ed. 155 (1939).

3. *Id.*

not distribute anti-war handbills within a privately owned shopping mall. The court refused to extend First Amendment protection to the plaintiffs reasoning that they were not entitled to such relief since the owners had a right to restrict the purposes for which the public used the mall. The court noted that the public streets surrounding the mall provided an effective alternate area in which plaintiffs could exercise their First Amendment rights, particularly in view of the fact that the speech was unrelated to the purposes of the mall. Citizens in general, and not merely patrons of the mall, were targets of the communication. The court also felt it significant that *all* handbilling was prohibited in the mall, and that the mall owners thus had not acted discriminatorily against plaintiffs' anti-war leaflets.

In 1976, the Supreme Court again rejected extending First Amendment protection where expression takes place on private property. In *Hudgens v. NLRB,* 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976), the Supreme Court held that warehouse employees of a company that operated retail stores had no First Amendment right to enter a privately owned shopping center for the purpose of advertising their strike against the retail store located therein. *Hudgen* noted that the amount of state action involved in *Logan Valley* and in *Lloyd* was essentially the same, and that the rationale of *Logan Valley* did not survive the Court's decision in *Lloyd.* The court commented that if a shopping center is the functional equivalent of a municipality, as *Logan Valley* held, then the First and Fourteenth Amendments would not permit control of speech within such a center to depend upon the speech's content since a municipality cannot discriminate in the regulation of expression on the basis of the content. 424 U.S. at 520, 96 S.Ct. at 1036. *Hudgens* concluded that under the present state of the law, the constitutional guaran-

tee of free speech is not applicable to a privately owned shopping center. It distinguished *Marsh* on the basis that the state had delegated a larger number of functions to the company which owned the entire town. In determining under what circumstances private property can be treated as though it were public, the Court concluded that the answer *Marsh* gives is that the property must have taken on *all* the attributes of a town. The Court found nothing in *Marsh* to support confiscating a part of an owner's private property and giving it to the people who want to picket on it simply because *one* of the features of a town happens to be present. *Id.* at 516–17, 96 S.Ct. at 1034–35.

In the instant action, it is clear that the segment of Grand Avenue privately owned by Knott's Berry Farm is the functional equivalent of a public street. It is not, however, the functional equivalent of a municipality such as existed in *Marsh.* Therefore, under the Supreme Court's holding in *Hudgen,* Plaintiffs are not entitled to declaratory and injunctive relief allowing them to freely distribute and sell religious literature and solicit donations on private property owned by Knott's Berry Farm. It should be noted that Knott's Berry Farm's policy precludes solicitation and proselytizing by members of *any* organization, and it is not alleged that this policy was implemented in a discriminatory manner against members of ISKCON.

Even accepting the more liberal test of *Logan Valley* (which was specifically disapproved in *Hudgen*), or the balancing approach used by Justice White in his concurring opinion in *Hudgen,* Plaintiffs' claim for relief fails. *Logan Valley* considered the relatedness of the speech and the existence of reasonable alternative sites for such expression—thus balancing the degree of harm to speech with the value of the right to property.[4] In the instant action, alternate forums are available to Plaintiffs on

---

4. While *Logan Valley* uses a functional equivalency test which relies on the state action doctrine, the reasoning of both *Logan Valley* and *Lloyd v. Tanner* also involve a balancing of rights. *See generally,* Glennon & Novak, A Functional Analysis of the Fourteenth Amendment State Action Requirement, 1976 Sup.Ct. Rev. 221, for a comparison of these two approaches.

which they can exercise their First Amendment rights since Knott's Berry Farm is bounded by five publically owned thoroughfares through which the public must pass in order to enter or exit the park. In addition, the southern portion of Grand Avenue adjacent to the privately owned section is publically owned and thus constitutionally accessible to Plaintiffs for their activities. Plaintiffs' speech is not related to the purpose of the amusement park and limiting their freedom of expression on the privately owned section of Grand Avenue will not be a severe hardship to them since the public in general, and not simply patrons of Knott's Berry Farm, are targets of their communications. Therefore, even under a balancing test which considers relatedness of the speech and the existence of reasonable alternative forums, Plaintiffs' claim for declaratory and injunctive relief must be denied.

Having concluded that Plaintiffs do not have a constitutionally protected right to free expression on the portion of Grand Avenue privately owned by Knott's Berry Farm,

IT IS ORDERED that judgment be entered in favor of all Defendants in this case.