**UNITED STATES of America**

v.

**Stephen R. SILBERMAN.**

No. 76–53–Cr–J–S.

United States District Court,
M. D. Florida,
Jacksonville Division.

Feb. 9, 1979.

John J. Daley, Jr., United States Atty.; Thomas E. Morris, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff.

William J. Sheppard, Jacksonville, Fla., for defendant.

## OPINION

CHARLES R. SCOTT, Senior District Judge.

Defendant was charged in an information with knowingly and wilfully soliciting business on federal property without a permit, by selling flowers. He was charged with violating 36 C.F.R. § 5.3,[1] as incorporated in 16 U.S.C. § 9a.[2] Defendant waived a jury trial, and requested special findings, pursuant to Fed.R.Crim.P. 23(c). Most of the facts were stipulated; and closing arguments of counsel were combined with their arguments on defendant's motion for a judgment of acquittal.

█ The standard for ruling on a judgment of acquittal is the same, regardless of whether a case was tried by a jury or by a court alone, and regardless of whether all of the evidence presented was circumstantial, or whether there was some direct evidence. If, viewing the evidence favorably to the government, reasonable minds could not conclude (1) that the evidence is inconsistent with, and excludes, every reasonable hypothesis of the accused's innocence, and (2) that the evidence supports the hypothesis of the accused's guilt, reasonable doubt necessarily exists. On the other hand, if reasonable minds could so conclude, there are no reasonable doubts. *United States v. Herberman,* 583 F.2d 222, 231 (5th Cir. 1978); *United States v. Palmere,* 578 F.2d 105, 106 (5th Cir. 1978); *United States v. Lonsdale,* 577 F.2d 923, 925 (5th Cir. 1978); *United States v. Gandolfo,* 577 F.2d 955, 958 (5th Cir. 1978); *United States v. Landers,* 576 F.2d 94, 96–7 (5th Cir. 1978); *United States v. Littrell,* 574 F.2d 828, 832 (5th Cir. 1978); *United States v. Marable,* 574 F.2d

224, 228–29 (5th Cir. 1978); *United States v. Alonzo,* 571 F.2d 1384, 1387 (5th Cir. 1978); *United States v. Boyd,* 566 F.2d 929, 935 and n. 13 (5th Cir. 1978); *United States v. Carrillo,* 565 F.2d 1323, 1325 (5th Cir. 1978); *United States v. Hines,* 563 F.2d 737, 740 (5th Cir. 1977); *United States v. Pinner,* 561 F.2d 1203, 1207 (5th Cir. 1977); *United States v. Haggins,* 545 F.2d 1009, 1011–13 (5th Cir. 1977); *United States v. Warner,* 441 F.2d 821–25 (5th Cir. 1971), *cert. denied* 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971). That standard applies to each element of an offense with which a defendant is charged, and for which the government carries the burden of proof. *United States v. Herberman,* 583 F.2d at 231; *United States v. Landers,* 576 F.2d at 97.

█ A defendant's request for special findings under Fed.R.Crim.P. 23(c) must be granted and the Court's findings, reasoning, and conclusions must be adequate to enable intelligent appellate review of the basis for the decision. *United States v. Pinner,* 561 F.2d at 1206; *United States v. Johnson,* 496 F.2d 1131, 1138 (5th Cir. 1974). In this opinion, the court articulates its findings, reasoning and conclusions, which form the basis for its decision.

### Facts

On February 12, 1976, defendant Stephen R. Silberman was present at the Castillo de San Marcos, a national monument under the exclusive jurisdiction of the United States Department of Interior, at St. Augustine, Florida. The Interior Department's National Park Service operates, supervises, and controls the monument. Defendant is a follower of the Hare Krishna religion. Dressed in ordinary street clothes,

---

1. 36 C.F.R. § 5.3 provides:
 Engaging in or soliciting any business in park areas, except in accordance with the provisions of a permit, contract, or other written agreement with the United States, except as such may be special regulations applicable to a park area, is prohibited.

2. 16 U.S.C. § 9a provides:
 The Secretary of the Army is authorized to prescribe and publish such regulations as he deems necessary for the proper government and protection of, and maintenance of good

order in, national military parks, national parks, battlefield sites, national monuments, and miscellaneous memorials as are now or hereafter may be under the control of the Department of the Army; and any person who knowingly and wilfully violates any such regulation shall be deemed guilty of a misdemeanor and punishable by a fine of not more than $100 or by imprisonment for not more than three months, or by both such fine and imprisonment.

he approached two National Park Service rangers who were also dressed in civilian clothes. He handed them a carnation and requested a donation. The donation was stated to be for some good purpose, such as fighting drug abuse, about which he said God or Krishna was concerned.

When one of the agents declined to donate, identified himself as a park ranger, and indicated that he was going to issue defendant a citation, defendant attempted to retrieve the flower. Instead, he was issued a citation.

The International Society for Krishna Consciousness, Inc. ('ISKCON'), is an international nonprofit religious organization which espouses the religious and missionary views of Krishna Consciousness, a branch of Hinduism. Krishna Consciousness believes in the absolute supremacy of a single deity, Krishna. ISKCON maintains temples and schools in cities throughout the United States and the world, including New Orleans, Dallas, Los Angeles, San Francisco, Montreal, New York City, Miami, Chicago, Paris, Singapore, Tokyo, India, and Evanston, Illinois.

A basic tenet of ISKCON is an obligatory, evangelical religious ritual known as 'sankirtan'. Followers, or devotees, are required to approach people in public places, distributing religious literature and small tokens or gifts, disseminating information, and soliciting donations. Sankirtan has three purposes: (1) to spread the religious information which the Hare Krishna religion deems to be the truth; (2) to proselytize and attract new members; and (3) to generate funds to support the religious activities of the movement. Sankirtan activity propels ISKCON's followers into city streets, tourist areas, airports, state fairs, rest stops along expressways, and urban convention centers. As a result, ISKCON has been involved in numerous litigation concerning sankirtan efforts in those places. *ISKCON v. Rochford*, 585 F.2d 263 (7th Cir. 1978), *aff'g in part and vac'g in part* 425 F.Supp. 734 (N.D.Ill.1977) (Chicago airports); *ISKCON v. New Orleans*, 347 F.Supp. 945 (E.D.La.1972) (Vieu· Carre

area); *ISKCON v. Conlisk*, 374 F.Supp. 1010 (N.D.Ill.1973) (Chicago streets); *ISKCON v. New York Port Authority*, 425 F.Supp. 681 (S.D.N.Y.1977) (three New York airports); *ISKCON v. Engelhardt*, 425 F.Supp. 176 (W.D.Mo.1977) (Kansas City International Airport); *ISKCON v. Griffin*, 437 F.Supp. 666 (W.D.Pa.1977) (Greater Pittsburgh International Airport); *ISKCON v. Hays*, 438 F.Supp. 1077 (S.D.Fla. 1977) (expressway rest stops); *ISKCON v. Evans*, 440 F.Supp. 414 (S.D.Ohio 1977) (Ohio State Fair); *Liberman v. Schesventer*, 447 F.Supp. 1355 (M.D.Fla.1978) (St. Augustine Fort); *ISKCON v. McAvey*, 450 F.Supp. 1265 (S.D.N.Y.1978) (New York World Trade Center); *ISKCON v. Collins*, 452 F.Supp. 1007 (S.D.Tex.1977) (Houston Airport); *ISKCON v. Wolke*, 453 F.Supp. 869 (E.D.Wisc.1978) (Milwaukee Airport); *ISKCON v. Kearnes*, 454 F.Supp. 116 (E.D. Calif.1978) (Sacramento streets); *ISKCON v. Bowen*, 456 F.Supp. 437 (S.D.Ind.1978) (Indiana State Fair); *ISKCON v. Schrader*, 461 F.Supp. 714 (N.D.Tex.1978) (Dallas convention center); *ISKCON v. Lentini*, 461 F.Supp. 49 (E.D.La.1978) (New Orleans airport); *ISKCON v. State Fair of Tex.*, 461 F.Supp. 719 (N.D.Tex.1978) (Texas State Fair). *Cf. ISKCON v. Reber*, 454 F.Supp. 1385 (C.D.Calif.1978) (sidewalks of private street).

The overall question in this case is whether defendant is guilty of violating the Army regulation that prohibits engaging in or soliciting any business in park areas without a permit. Defendant affirmatively pleads that he is not guilty because he was engaging in the exercise of his religion which is protected by the First Amendment. The government argues, however, that defendant's conduct was not the protected exercise of religious belief, but a purely commercial activity in violation of the regulation. Additionally, the government, by its information charging defendant with violating the Army regulation, takes the position that that regulation prohibits defendant's conduct. In order to reach a decision on the primary question in this case, raised respectively by the government's information and defendant's motion for a judgment of ac-

quittal, the Court must (1) characterize the nature of defendant's conduct, and (2) construe the regulation which he is charged with violating.

## Law

### 1. Character of Defendant's Conduct

■ Indispensable to determining whether the free exercise clause[3] of the First Amendment protects defendant's conduct is discerning the nature of that conduct. On the one hand, despite the fact that it may include distribution, sales, and solicitations, the exercise and practice of religious belief is a freedom guaranteed by the First Amendment. On the other hand, purely commercial activity does not enjoy the same kind of protection.

> Situations will arise where it will be difficult to determine whether a particular activity is religious or purely commercial. The distinction at times is vital. . . . "The state can prohibit the use of streets for the distribution of purely commercial leaflets, even though such leaflets may have a 'civic appeal, or a moral platitude' appended. . . . They may not prohibit the distribution of handbills in the pursuit of a clearly religious activity merely because the handbills invite the purchase of books for the improved understanding of the religion or because the handbill seeks in a lawful fashion to promote the raising of funds for religious purposes." But the mere fact that the religious literature is "sold" by itinerant preachers rather than "donated" does not transform evangelism into a commercial enterprise. If it did, then the passing of the collection plate in church would make the church service a commercial project. The constitutional rights of those spreading their religious beliefs through the spoken and printed word are not to be gauged by standards governing retailers or wholesalers of books. The right to use the press for expressing one's views is not to be measured by the protection afford-

ed commercial handbills. It should be remembered that the pamphlets of Thomas Paine were not distributed free of charge. It is plain that a religious organization needs funds to remain a going concern. But an itinerant evangelist however misguided or intolerant he may be, does not become a mere book agent by selling the Bible or religious tracts to help defray his expenses or to sustain him. Freedom of speech, freedom of the press, freedom of religion are available to all, not merely to those who pay their own way. As we have said, the problem of drawing the line between a purely commercial activity and a religious one will at times be difficult. *Murdock v. Pennsylvania,* 319 U.S. 105, 110–11, 63 S.Ct. 870, 874, 87 L.Ed. 1292, 1297–98 (1942).

Characterization of the particular conduct in question, in other words, is crucial to deciding whether there is any conflict between the free exercise clause of the First Amendment and the particular statute, ordinance, or regulation involved. *Cf. Muhammad Temple of Islam v. Shreveport, La.,* 387 F.Supp. 1129, 1135 (W.D.La.1974), aff'd 517 F.2d 922 (5th Cir. 1975). Such characterization is ultimately a conclusion of law, but it is drawn from, and based on, an initial assessment of the factual record. *Cf. Grutka v. Barbour,* 549 F.2d 5, 8 (7th Cir. 1977), In short, characterization of conduct is a mixed question of law and fact.

■ Although the government argues that defendant was engaged in the purely commercial activity of selling flowers, the Court cannot agree. This is not a case of a defendant engaged in purely commercial activities that are inconsistent with, and repugnant to, his asserted religious beliefs. *United States v. Top Sky,* 547 F.2d 486, 488 (9th Cir. 1976). Neither is it a case of a defendant's purely commercial activities that are completely independent of the exercise of any religious tenets. *Muhammad Temple of Islam v. Shreveport, La.,* 387 F.Supp. at 1135–36. Defendant's conduct

**3.** The First Amendment's free exercise clause, U.S.Const., amend. I, provides:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . .

in distributing literature and soliciting donations is an integral part of the missionary proselytizing known as 'sankirtan'; and as already noted, sankirtan is an essential tenet of the practice of ISKCON. In cases involving ISKCON and its followers, and in which the practice of sankirtan was involved, the courts have consistently held that it is an inextricable part of the Hare Krishna religion, and as such is protected by the free exercise clause of the First Amendment. *ISKCON v. Rochford,* 585 F.2d at 270; *ISKCON v. State Fair of Tex.,* 461 F.Supp. at 722–23; *ISKCON v. Lentini,* 461 F.Supp. at 51; *ISKCON v. Schrader,* 461 F.Supp. at 716; *ISKCON v. Bowen,* 456 F.Supp. at 441; *ISKCON v. Kearnes,* 454 F.Supp. at 118; *ISKCON v. Wolke,* 453 F.Supp. at 872; *ISKCON v. Collins,* 452 F.Supp. at 1008; *Liberman v. Schesventer,* 447 F.Supp. at 1358; *ISKCON v. Evans,* 440 F.Supp. at 420; *ISKCON v. Hays,* 438 F.Supp. at 1081; *ISKCON v. Griffin,* 437 F.Supp. at 669; *ISKCON v. Englehardt,* 425 F.Supp. at 179; *ISKCON v. Conlisk,* 374 F.Supp. at 1013; *ISKCON v. New Orleans,* 347 F.Supp. at 947. *Cf. ISKCON v. Reber,* 454 F.Supp. at 1389; *ISKCON v. New York Port Authority,* 425 F.Supp. at 682, 683, 687. Unquestionably, therefore, defendant's conduct is the exercise of religion, a freedom guaranteed by the First Amendment; and the Court so holds.

## 2. Interpretation of the Regulation

[7] Although defendant has challenged the regulation on its face, and as applied to him, it does not appear facially to regulate religious conduct. The language of the regulation prohibits "engaging in or soliciting any business" without a permit. Moreover, the regulation cannot lawfully be applied to defendant. If, as the government charged in its information, the regulation applies to defendant's conduct, which is essentially the exercise of his religion, then the regulation is invalid because it is unconstitutional. On the other hand, if the regulation does not apply to defendant's conduct, then he has not violated the regulation as charged. In either event, the judgment of acquittal must be granted.

## The Regulation Cannot Apply and be Constitutional

■ The freedom to adhere to religious beliefs is absolute. *Sherbert v. Verner,* 374 U.S. 398, 402, 83 S.Ct. 1790, 1792, 10 L.Ed.2d 965, 969 (1963); *Braunfeld v. Brown,* 366 U.S. 599, 603, 81 S.Ct. 1144, 1145, 6 L.Ed.2d 563, 566 (1961); *United States v. Ballard,* 322 U.S. 78, 86–7, 64 S.Ct. 882, 886, 88 L.Ed. 1148, 1154 (1944); *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213, 1218 (1940); *In re Rabbinical Seminary,* 450 F.Supp. 1078, 1081 (E.D.N.Y. 1978); *Liberman v. Schesventer,* 447 F.Supp. at 1358; *Stevens v. Berger,* 428 F.Supp. 896, 899–900 (E.D.N.Y.1977). The freedom to express or exercise religious beliefs, on the other hand, is not absolute. The expression and exercise of religion, like speech and assembly, may be regulated and restricted in the time, place, and manner in which they occur. *Sherbert v. Verner,* 374 U.S. at 401, 403, 83 S.Ct. at 1792, 1793, 10 L.Ed.2d at 969–70; *Braunfeld v. Brown,* 366 U.S. at 603, 81 S.Ct. at 1145, 6 L.Ed.2d at 566; *Murdock v. Pennsylvania,* 319 U.S. at 110, 63 S.Ct. at 873, 87 L.Ed. at 1297; *Cantwell v. Connecticut,* 310 U.S. at 304, 60 S.Ct. at 904, 84 L.Ed. at 1218; *ISKCON v. Rochford,* 585 F.2d at 271; *ISKCON v. Wolke,* 453 F.Supp. at 874; *ISKCON v. McAvey,* 450 F.Supp. at 1268–69; *Liberman v. Schesventer,* 447 F.Supp. at 1358; *ISKCON v. Engelhardt,* 425 F.Supp. at 180 and n. 6; *ISKCON v. Comlisk,* 374 F.Supp. at 1017.

■ However, because the freedom to exercise religious beliefs, like freedom of speech, freedom of press, and freedom of assembly, is "among the fundamental personal rights and liberties" protected by the First Amendment, *Lovell v. Griffin,* 303 U.S. 444, 450, 58 S.Ct. 666, 668, 82 L.Ed. 949, 953 (1938), a compelling interest must be shown to justify regulating or restricting them. *Sherbert v. Verner,* 374 U.S. at 406, 83 S.Ct. at 1795, 10 L.Ed.2d at 972; *ISKCON v. Lentini,* 461 F.Supp. at 53; *In re Rabbinical Seminary,* 450 F.Supp. at 1081;

*ISKCON v. Hays*, 438 F.Supp. at 1081. Since there is a presumption against restraints on First Amendment freedoms, the specific means of regulating or limiting those freedoms must be the least restrictive ones possible and needed to accomplish the compelling public purpose. It is not constitutionally adequate or acceptable to show that the particular means selected are one rational way of achieving the governmental purpose. The burden is on the government to demonstrate that the chosen means are the minimum restrictive ones necessary. *Keyishian v. Board of Regents of SUNY*, 385 U.S. 589, 602, 87 S.Ct. 675, 683, 17 L.Ed.2d 629, 640 (1967); *Cantwell v. Connecticut*, 310 U.S. at 304, 60 S.Ct. at 903, 84 L.Ed.2d at 1218; *ISKCON v. Rochford*, 585 F.2d at 269; *ISKCON v. Kearnes*, 454 F.Supp. at 119; *ISKCON v. Bowen*, 456 F.Supp. at 443; *Liberman v. Schesventer*, 447 F.2d at 1359–60 and nn. 11 and 14. *Cf. ISKCON v. McAvey*, 450 F.Supp. at 1269; *ISKCON v. Griffin*, 437 F.Supp. at 670–71.

 Any statute, ordinance, or regulation restricting the exercise of fundamental personal freedoms, like the exercise of religion, must contain standards and criteria that are narrow and strict, definitive and objective, for any intrusion into the sphere of protected liberties to be upheld. Without those kinds of standards, the restriction allows an unlimited and unbridled discretion that amounts to a prior restraint on the exercise of constitutional freedoms. *ISKCON v. Rochford*, 585 F.2d at 268, 269; *ISKCON v. Lentini*, 461 F.Supp. at 51, 53; *ISKCON v. Wolke*, 453 F.Supp. at 874; *ISKCON v. Collins*, 452 F.Supp. at 1008; *ISKCON v. Hays*, 438 F.Supp. at 1081; *ISKCON · v. Griffin*, 437 F.Supp. at 670, 671–72; *ISKCON V. Engelhardt*, 425 F.Supp. at 179; *ISKCON v. New York Port Authority*, 425 F.Supp. at 683. Although "not unconstitutional per se," prior restraints are inherently suspect. *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448, 459 (1975). There is "a heavy presumption against [the] constitutional validity" of prior restraints upon the exercise of First Amendment freedoms. *ISKCON v. Rochford*, 585 F.2d at 271. *See ISKCON v. Bowen*, 456 F.Supp. at 443; *ISKCON v. Hays*, 438 F.2d at 1081.

 Furthermore, any restraint on the exercise of basic personal freedoms guaranteed by the First Amendment must also supply adequate safeguards of procedural due process to ensure available, corrective review of a decision to deny or limit those freedoms. Such safeguards prevent the danger of (1) wrongful prohibitions and (2) virtual bans on the exercise of freedoms. Absent those safeguards, such restrictions or denials would be final.[4] In short,

---

4. Insofar as *Liberman v. Schesventer*, 447 F.Supp. 1355, 1360–61 (M.D.Fla.1978), is contrary on the issue of procedural due process safeguards, that decision is highly questionable, and the Court is skeptical of it. *Liberman v. Schesventer* was a civil action by ISKCON of North Fla., Inc., and its president, seeking to enjoin a different regulation pertaining to national parks and monuments, like the Castillo de San Marcos, from being enforced. That regulation allowed the sale or distribution of literature within park areas only if a permit were issued by the park superintendent. The regulation contained a specific list of criteria which would justify the denial of a permit; otherwise, a permit was to be issued "without unreasonable delay." The regulation did not, however, furnish any procedural due process safeguards to protect against the risk of erroneous and wrongful, but final, denials of a permit, along with the right to exercise First Amendment freedoms. The district court concluded that such safeguard procedures were "not re-

quired here." *Id.* at 1361. Its conclusion was based on the premises that (1) the particular form and kind of procedural due process in any given situation is flexible and variable according to that situation; (2) that "various regulatory schemes" required flexibility; (3) that a person who was denied a permit to exercise First Amendment freedoms would be notified of "the reasons . . . in writing"; and (4) that anyone wishing to challenge the restriction or denial of First Amendment freedoms in park areas can do so by initiating litigation as the plaintiff had done there.

While accepting the premises, the Court must reject the conclusion.

While procedural due process is flexible and variable in different situations, the complete absence of any due process at all cannot be justified under the guise of flexibility. *Craig v. Carson*, 449 F.Supp. 385, 395 (M.D. Fla.1978). *See also Hann v. Carson*, 462 F.Supp. 854, 867 (M.D.Fla.1978).

"prompt notice and review proceedings must be included" in any restriction or restraint. *ISKCON v. Rochford,* 585 F.2d at 272. *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. at 559–62, 95 S.Ct. at 1246–48, 43 L.Ed.2d at 459–62; *Freedman v. Maryland,* 380 U.S. 51, 58–60, 85 S.Ct. 734, 738–739, 13 L.Ed.2d 649, 654–55 (1965); *ISKCON v. Rochford,* 585 F.2d at 271–72; *ISKCON v. Kearnes,* 454 F.Supp. at 120–21; *ISKCON v. Griffin,* 437 F.Supp. at 671.

 There can be no serious dispute that the Castillo de San Marcos National Monument is a public forum area. "Numerous public places, far more enclosed and less open . . . have been held to be first amendment forums where persons may circulate and engage in first amendment expressions." *ISKCON v. Bowen,* 456 F.Supp. at 442. It is, therefore, "a matter of law that those areas . . . which are generally open to the public constitute a public forum." *ISKCON v. Wolke,* 453 F.Supp. at 872. *See also ISKCON v. Schrader,* 461 F.Supp. at 717–19 and n. 4; *ISKCON v. Evans,* 440 F.Supp. at 422;

*ISKCON v. Engelhardt,* 425 F.Supp. at 180. To be sure, the use of public forums for First Amendment freedoms, like the exercise of religious beliefs, is subject to regulation and restriction. But any restriction or regulation must be justifiable for a compelling, demonstrable purpose, and must employ the least burdensome restrictive means possible. Obviously and absolute ban or denial of the right to exercise First Amendment freedoms in public forum area is unconstitutional; and it is no redeeming justification that a complete prohibition is uniform and across the board, without discrimination, or that there are alternative public forums available in different places.

If, as the government assumes, and asserts by its charge in the information, the regulation, 36 C.F.R. § 5.3, did apply to defendant's essentially religious activity, then the regulation would have to be struck down as unconstitutional. It contains no rigorously definite and objective standards for restricting religious activity in time, place, or manner. Neither does it provide

Furthermore, mere written notice of the fact of denial of a permit, and restriction of First Amendment freedoms, is not constitutionally adequate. The United States Supreme Court recently reasserted, *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 14, 98 S.Ct. 1554, 1563, 56 L.Ed.2d 30, 42 (1978), that "[t]he purpose of notice . . . is to apprise the affected individual of, and permit adequate preparation for," a hearing to be provided. Before a person is finally and irrevocably deprived of his liberty, some kind of hearing concerning that deprivation is required, whether preceding or swiftly following the initial deprivation. *Id.* 436 U.S. at 15, 98 S.Ct. at 1563, 56 L.Ed.2d at 43; *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18, 32 (1976); *Craig v. Carson,* 449 F.Supp. at 391. This Court, like the Supreme Court, has recently "repudiated the notion that notice of a *fait accompli* would satisfy the demands of the Due Process Clause." *Hann v. Carson,* 462 F.Supp. at 867; *Craig v. Carson,* 449 F.Supp. at 395. Such notice, while

. . . adequate to apprise [the affected individuals] of the threat of termination of [the interest at stake], [is] not "reasonably calculated" to inform them of the availability of "an opportunity to present their objections" . . . *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. at 13, 98 S.Ct. at 1562, 56 L.Ed.2d at 42.

Finally, "[a]part from bringing an independent lawsuit . . . to challenge the legal effect of the [regulation], an individual has no opportunity to contest" the effect of adverse decisions under it. *Craig v. Carson,* 449 F.Supp. at 392. The Supreme Court has emphatically rejected the view that litigation by an adversely affected individual is "an adequate substitute" for an accurate, administrative remedy. *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. at 18–20, 98 S.Ct. at 1565–1566, 56 L.Ed.2d at 45–46.

An action in equity to halt an improper [deprivation of one's rights], because it is less likely to be pursued and less likely to be effective, even if pursued, will not provide the same assurance of accurate decisionmaking as would an adequate administrative procedure. *Id.* 436 U.S. at 21, 98 S.Ct. at 1566, 56 L.Ed.2d at 46.

As a consequence, the Court adheres to the principle that a regulation allowing for the absolute and final denial of fundamental personal freedoms, like the exercise of religious belief, without providing basic safeguards of procedural due process, is constitutionally infirm and invalid. *See ISKCON v. Rochford,* 585 F.2d at 272; *ISKCON v. Keavnes,* 454 F.Supp. at 120; *ISKCON v. Griffin,* 437 F.Supp. at 670.

any of the vital procedural safeguards to ensure that fundamental, personal liberties are not absolutely and finally denied without recourse.

Because the national monument is apparently a public forum, if the regulation in question did apply to defendant's religious conduct, then it would in essence open that forum to the exercise of First Amendment freedoms by allowing defendant's activity to be conducted upon the issuance of a permit. *See ISKCON v. Engelhardt*, 425 F.Supp. at 180. There is no question that if defendant's conduct were encompassed within the scope of the regulation, then it could not overcome the heavy presumption and inherent suspicion against it, nor could it withstand the intense scrutiny of measuring it against First Amendment standards. In that event, the regulation would necessarily fall; defendant's protected religious freedom would prevail; and he would not be guilty of violating any constitutionally sound regulation.

### The Regulation Does Not Apply and is Constitutional

There are two cardinal canons of interpretation that preserve the validity and constitutionality of the regulation in question. In so doing, however, they lead to the conclusion that the regulation does not apply to, or cover, defendant's conduct.

First, a statute or regulation should be interpreted to uphold its constitutionality, insofar as possible, since the governmental body enacting or promulgating it is presumed to have intended a valid exercise of legislative or quasi-legislative power. *United States Civil Service Comm'n v. National Ass'n of Letter Carriers*, 413 U.S. 548, 571, 93 S.Ct. 2880, 2893, 37 L.Ed.2d 796, 812 (1973); *United States v. Vuitch*, 402 U.S. 62, 70, 91 S.Ct. 1294, 1298, 28 L.Ed.2d 601, 608 (1971); *United States v. National Dairy Prods. Corp.*, 372 U.S. 29, 32, 83 S.Ct. 594, 597, 9 L.Ed.2d 561, 565 (1963); *Flemming v. Nestor*, 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435, 1448 (1960); *Ashwander v. TVA*, 297 U.S. 288, 348, 56 S.Ct. 466, 483, 80 L.Ed. 688, 712 (1936); *United States*

*v. Thomas*, 567 F.2d 299, 300 (5th Cir. 1978); *Marshall v. Reinhold Constr. Inc.*, 441 F.Supp. 685, 594 (M.D.Fla.1977). By interpreting 36 C.F.R. § 5.3 to apply only to the regulation of purely commercial activity, and not to religious activity such as defendant's conduct, any conflict with the free exercise clause of the First Amendment is avoided.

Second, whenever there is any uncertainty or ambiguity about a criminal statute or regulation, it must be strictly construed against the government, and in favor of leniency for a defendant. *Adamo Wrecking Co. v. United States*, 434 U.S. 275, 283, 98 S.Ct. 566, 572, 54 L.Ed.2d 538, 548 (1978); *Huddleston v. United States*, 415 U.S. 814, 830–31, 94 S.Ct. 1262, 1271, 39 L.Ed.2d 782, 794 (1974); *United States v. Bass*, 404 U.S. 336, 347–48, 92 S.Ct. 515, 522, 30 L.Ed.2d 488, 496–97 (1971); *United States v. Campos-Serrano*, 404 U.S. 293, 297, 92 S.Ct. 471, 474, 30 L.Ed.2d 457, 462 (1971); *United States v. Cook*, 384 U.S. 257, 262–63, 86 S.Ct. 1412, 1414, 16 L.Ed.2d 516, 520 (1966); *United States v. Healy*, 376 U.S. 75, 82, 84 S.Ct. 553, 557, 11 L.Ed.2d 527, 534 (1964); *United States v. Monasterski*, 567 F.2d 677, 681 (6th Cir. 1977); *United States v. Allen*, 566 F.2d 1193, 1195 (3d Cir. 1977); *United States v. Moreno*, 561 F.2d 1321, 1323 (9th Cir. 1977); *United States v. McClain*, 545 F.2d 988, 995 (5th Cir. 1977); *United States v. Block*, 452 F.Supp. 907, 910–11 (M.D.Fla.1978). The principle of strict construction, and the rule of lenity that it includes is

. . . rooted in the law's concern for the rights of the individual, and the need to provide a clear, definite, and fair warning about what constitutes criminal conduct and is therefore punishable by the loss of liberty or property. *United States v. Block*, 452 F.Supp. at 911.

*See Huddleston v. United States*, 415 U.S. at 831, 94 S.Ct. at 1271, 39 L.Ed.2d at 794; *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 375, 93 S.Ct. 1652, 1663, 36 L.Ed.2d 318, 333 (1973); *United States v. Bass*, 404 U.S. at 347–48, 92 S.Ct. at 522, 30 L.Ed.2d at 496–97; *United States v. Monas-*

*terski*, 567 F.2d at 682. Hence, the principle of strict construction leads to the interpretation of the regulation that precludes its application to defendant's religious activity.

### Conclusion

Under any view of the regulation, whether applicable or inapplicable to defendant's conduct, the government charged him under an incorrect regulation: one that is either unconstitutional, or that does not apply to him. Consequently, as a matter of law defendant has not committed the offense charged.

The free exercise clause of the First Amendment guarantees the followers of seemingly aberrant and heterodox religions, no matter how misguided, intolerant, or excessively zealous and fanatical they may be, the same liberties and protection as the more historical, traditional, and orthodox religions.

In the realm of religious faith, and in that of political belief, sharp differences arise. In both fields the tenets of one man may seem the rankest error to his neighbor. To persuade others to his own point of view, the pleader, as we know, at times, resorts to exaggeration, to vilification of men who have been, or are, prominent in church or state, and even to false statement. But the people of this nation have ordained in the light of history, that, in spite of the probability of excesses and abuses, these liberties are, in the long view, essential to enlightened opinion and right conduct on the part of the citizens of a democracy.

The essential characteristic of these liberties is, that under their shield many types of life, character, opinion and belief can develop unmolested and unobstructed. Nowhere is this shield more necessary than in our own country for a people composed of many races and of many creeds. *Cantwell v. Connecticut*, 310 U.S. at 310, 60 S.Ct. at 906, 84 L.Ed. at 1221.

Accordingly, the motion for judgment of acquittal must be granted.